2024 IL App (2d) 230463
No. 2-23-0463
Opinion filed January 25, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2038 |
| JONATHON ANDINO-ACOSTA, | ) ) | Honorable Theodore S. Potkonjak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1                               I. INTRODUCTION

¶ 2     Defendant, Jonathon Andino-Acosta, appeals an order of the circuit court of Lake County granting the State's motion to detain him in accordance with section 110-6.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1 (West 2022) (we will refer to article 110 of the Code as the "Pretrial Fairness Act" or "Act")).[1] For the reasons that follow, we affirm.

¶ 3                               II. BACKGROUND

_____

[1]The Act has been referred to as the "Pretrial Fairness Act" and the "SAFE-T Act"; however, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

¶ 4    Defendant was charged by complaint with aggravated domestic battery, interfering with the reporting of domestic violence, resisting a peace officer, and domestic battery. The State filed a petition to detain defendant. The trial court held a hearing, and the State made a proffer that on October 14, 2023, police responded to the victim's residence. The victim was "in the street, crying and trying to catch her breath." The victim reported that she was watching movies with her minor children. Defendant arrived home and appeared to be intoxicated. He started to criticize the victim in front of the children, telling them they would be better off if the victim was dead. Defendant called a friend and asked the friend to bring a gun to the residence. The victim feared for her life. Defendant grabbed her and pushed her to the floor. She tried to stand, and he punched her in the sternum. He pulled her up by her shirt and pushed her into the kitchen, where he placed his hands around her neck and choked her. Defendant then pushed her out the front door, saying, "[Y]ou need to leave, or I will kill you." He pulled off her necklace as he shoved her out the door, and he locked the door. The victim flagged down a passing car for help. The State further alleged that when the police arrived, defendant was locked inside the house with the children. He refused to come out. Eventually, the officers forced the door open and "attempted to place defendant into custody, which he resisted, repeatedly."

¶ 5    A pretrial services assessment was performed. It revealed no adult criminal convictions. Defendant did, however, have a pending DUI charge.

¶ 6    Following argument, the trial court granted the State's petition. It explained:

> "Well, the Court heard the proffer by the State. The Court heard–it's not simple domestic. It's a domestic with allegations of strangulation which does ramp it up to a degree, to a different degree with violence and, it's in front of the children and you know what? O.P.'s are not bullet proof. My orders are not bullet proof. But he's made the threats.

He's on bond for D.U.I.

* * *

He has this incident with alcohol as part of it, and the Court looks at the entirety. Does the Court feel comfortable there are less restrictive way [*sic*] of keeping her safe with the children given the fact this is a semi standoff situation? The Court does not feel that way. So based on clear and convincing evidence the Court does feel proof is evident and presumption great the defendant committed the offense and no conditions or combination of conditions can be present to protect the victim or her children. Therefore, this Court going [*sic*] to grant the petition to detain."

The trial court's written findings provided "[t]hat the proof is evident or the presumption great that the defendant has committed an offense listed in [section 110-6.1(a) of the Act (725 1LCS 5/110-6.1(a) West 2022))]" and "[t]hat no condition or combination of conditions can mitigate the real and present threat to the safety of any person." It further found "that less restrictive conditions would not assure safety to the community." These findings were contained in a preprinted form. Defendant now appeals.

¶ 7                                    III. ANALYSIS

¶ 8     On appeal, defendant raises two issues. First, he contends that the trial court's written findings are not sufficiently detailed to comply with section 110-6.1(h)(1) of the Act (720 ILCS 5/110-6.1(h)(1) (West 2022)). See *People v. Horne*, 2023 IL. App (2d) 230382, ¶ 18. Second, he argues that the State failed to prove that no set of conditions could mitigate the danger that his release posed.

¶ 9     We review a trial court's decision to detain a defendant using a two-part standard of review. We apply the manifest-weight standard to the trial court's factual determinations, including

whether any conditions of release could adequately mitigate the risk defendant's release would present to the community. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if an opposite conclusion to the trial court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52. Questions of law and the construction of statutes are reviewed *de novo*. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 16.

¶ 10                            1. The Trial Court's Findings

¶ 11    Defendant first contends that the trial court did not make adequate written findings as required by the statute and asks that we reverse the detention order and remand for a new hearing. As always, our primary goal in construing a statute is to give effect to the intent of the legislature, and the best evidence of that intent is the plain language of the statute. *Swan*, 2023 IL App (5th) 230766, ¶ 17. We presume the legislature did not intend to create absurd, inconvenient, or unjust results. *In re D.F.*, 208 Ill. 2d 223, 229 (2003).

¶ 12    Section 110-6.1(h)(1) of the Act (720 ILCS 5/110-6.1(h)(1) (West 2022)) provides:

"The court shall, in any order for detention:

(1) make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution."

¶ 13    Admittedly, the trial court's written findings in this matter are conclusory. The trial court

relied on the preprinted findings "[t]hat no condition or combination of conditions can mitigate the real and present threat to the safety of any person," and "that less restrictive conditions would not assure safety to the community." While the plain language of section 110-6.1(h)(1) requires only that a trial court "summarize" its findings, we must decide if the order complies with the statute.

¶ 14     *In re Madison H.*, 215 Ill. 2d 364 (2005), is illustrative. In that case, our supreme court addressed another statute that directed a trial court to "put[] in writing the factual basis supporting the determination of whether" the parents or guardian of a minor are unfit or unable or unwilling to care for the minor. See 705 ILCS 405/2-27(1) (West 2002). Holding that the purpose of the writing requirement was to give the parties notice of the trial court's reasoning and to preserve that reasoning for appellate review, the supreme court explained that oral findings could satisfy this statutory requirement:

> "Explicit oral findings stated during a dispositional hearing advise the parties of the basis
> for the removal of the minor and, once transcribed, provide an equal opportunity to review
> the validity of the findings on appeal as well as written findings contained in an order."
> *Madison H.*, 215 Ill. 2d at 374-75.

While the supreme court was addressing a different statute than the one at issue in this case, its reasoning applies here.

¶ 15     In relation to the Pretrial Fairness Act, several courts have contemplated a trial court's written findings being supplemented by its oral pronouncements. In *People v. Stock*, 2023 IL App (1st) 231753, ¶ 20, after noting the inadequacy of the trial court's written findings, the reviewing court, prior to holding the trial court's ultimate findings lacking, noted that its oral findings were also inadequate. Similarly, in *People v. Peralta*, 2023 IL App (1st) 231897-U, ¶ 13, the reviewing court, after finding that the trial court failed to comply with section 110-6.1(h)(1)'s requirement

that the trial court summarize its findings in writing, considered both the trial court's oral and written findings in assessing their adequacy: "Here, there is no indication in the court's verbal ruling or written order that it considered less restrictive conditions, let alone an explanation of why less restrictive conditions would not mitigate the threat." See also *People v. Dallefeld*, 2023 IL App (4th) 230925-U, ¶ 18 ("The court's oral and written rulings fall short of complying with this legislative requirement of addressing less restrictive conditions of release."). Indeed, in *People v. Davis*, 2023 IL App (1st) 231856, ¶ 34, the reviewing court gave effect to the oral pronouncement of the trial court where it conflicted with the written detention order.

¶ 16    *People v. Odehnal*, 2024 IL App (5th) 230877-U, reversed a detention order based, at least in part, upon deficiencies in the written order. However, Justice Boie, in a well-reasoned dissent, described "extremely detailed, fact specific findings" made orally by the trial court and argued that "the trial court's written order, *taken in conjunction with the specific findings stated on the record*, was sufficient to properly comply with section 110-6.1(h)(1)." (Emphasis added.) *Odehnal*, 2024 IL App (5th) 230877-U, ¶ 23 (Boie, J., dissenting). Discussing *Madison H.*, Justice Boie stated: "Although the supreme court in *In re Madison H.* was construing a different statute, I do not believe there are considerations that would lead to a different result in the construction of the writing requirement here." *Id.* ¶ 22. He concluded that allowing oral findings to supplement written ones "does nothing to impede the defendant in his detention hearing or an appeal therefrom, and thus the defendant would suffer no prejudice by this construction." *Id.*

¶ 17    As the supreme court examined the statute at issue in *Madison H.*, 215 Ill. 2d at 373-74, we likewise observe that the Pretrial Fairness Act's purpose is to effectuate the goal of utilizing pretrial release by nonmonetary means to reasonably ensure an eligible person's appearance in court, the safety of the community, and compliance with the law and with pretrial conditions, while

authorizing the court, upon motion of the prosecutor, to detain when it finds by clear and convincing evidence that no condition or combination of conditions can reasonably ensure those goals. (720 ILCS 5/110-2(e)(West 2022).) The Act is to be liberally construed to effectuate its purpose. *Id*.

¶ 18    In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Pretrial release may be denied only in certain statutorily limited situations (qualifying offenses) (725 ILCS 5/110-2(a), 110-6.1 (West 2022)) and after a hearing compliant with its provisions. *Id.* If the trial court determines that the defendant should be denied pretrial release, the court is required to make a written finding summarizing the reasons for denying pretrial release, "based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(h)(1) (West 2022). Decisions under the Act "must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022). Both the defendant and the State may appeal a decision on a petition to detain. 725 ILCS 5/110-6.1(j) (West 2022).

¶ 19    Examining the Act as a whole, it is clear that the Act's requirement in section 110-6.1(h)(1) of a written order with a summary of the trial court's reasons for concluding less restrictive conditions would not avoid the threat to safety was to ensure that detention decisions were based upon specific articulable facts and were individualized to each defendant and to provide notice to the parties of the reasons for the court's decision and to preserve this reasoning for appellate review. Given that purpose, we hold that an explicit and individualized oral ruling may satisfy section 110-6.1(h)(1). Therefore, in assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements.

¶ 20    We turn now to the issue of whether the trial court's oral findings in this case satisfied the

standard of an explicit and individualized ruling, and we find that they did. Although brief, the court's ruling efficiently displayed an analysis of the factors concerning the determination of dangerousness, in accord with section 110-6.1(g) of the Act, and articulated its reasons why less restrictive conditions would not avoid the threat to safety. 725 ILCS 5/110-6.1(g), 110-6.1 (h)(1) (West 2022).

¶ 21     The court considered the nature and circumstances of the offense in accordance with section 110-6.1(g)(1): "[I]t's not simple domestic. It's a domestic with allegations of strangulation which does ramp it up to a degree, to a different degree with violence and, it's in front of the children." 725 ILCS 5/110-6.1(g)(1)(West 2022). The court assessed the history and characteristics of the defendant as directed by section 110-6.1(g)(2): "he's made the threats." "He has this incident with alcohol as part of it, and the Court looks at the entirety." 725 ILCS 5/110-6.1(g)(2)(West 2022). Relevant to both sections 110-6.1(g)(2) and 110-6.1(g)(9), it is evident the court was concerned about the facts proffered that defendant refused to admit the police to the home, requiring them to force the door and effect arrest over defendant's resistance, which constituted violent, abusive, or assaultive behavior: "[T]his is a semi standoff situation." 725 ILCS 5/110-6.1(g)(2), 110-6.1(g)(9)(West 2022). The court looked at whether the defendant was on bond, pertinent to section 110-6.1(g)(8): "He's on bond for D.U.I." 725 ILCS 5/110-6.1(g)(8)(West 2022). And, the court stated its reasons why less restrictive conditions (reliant on the ability to obey court orders) would not mitigate the threat: "O.P.'s are not bullet proof. My orders are not bullet proof. But he's made the threats. He's on bond for D.U.I. He has this incident with alcohol as part of it, and the Court looks at the entirety. Does the Court feel comfortable there are less restrictive way [*sic*] of keeping her safe with the children given the fact this is a semi standoff situation? The Court does not feel that way."

¶ 22    The oral ruling was explicit and individualized and, read together with its written findings, was sufficient to apprise the defendant of the reasons for its ruling and to accommodate review under the Act. As the supreme court did in *Madison H.*, we reject a "formalistic technical" reading of the Act. 215 Ill. 2d at 375. Remanding this cause so that the trial court could transcribe its oral findings into a written order would not serve the interests of justice. The trial court honored the purpose and provisions of the statute. We find no basis to disturb the trial court's order here.

¶ 23                             2. Manifest Weight Of The Evidence

¶ 24    Defendant next contends that the State failed to prove that there were no conditions of release that could mitigate the risk of his release. Section 6.1(e)(3) of the Act (720 ILCS 5/110-6.1(e)(3) (West 2022)) provides that a defendant may be detained only if "no condition or combination of conditions *** can mitigate [] the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." As noted, the trial court determined that no such conditions existed. We review such decisions using the manifest-weight standard. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. Further, it is well-established that we review the result to which the trial court came rather than its reasoning. *People v. Johnson*, 208 Ill. 2d 118, 128 (2003).

¶ 25    As discussed, in support of its finding that no conditions would adequately mitigate the risk defendant presented, the trial court first noted the nature of the charged offense, particularly that it involved strangulation. Moreover, the offense took place in the presence of defendant's children, allowing an inference that defendant has difficulty controlling himself. This is further indicated by defendant's refusal to comply with orders of the police to come out of the residence, which required the police to force the door open. When they finally did so, defendant resisted their attempts to take him into custody. All of this shows disrespect toward the law, as does the fact that

these events took place while defendant had DUI charges pending. The trial court acknowledged that its orders are not "bullet proof." Based on the evidence, the trial court could reasonably infer that an order of protection and conditions of release would be insufficient.

¶ 26 Defendant contends that SCRAM monitoring would adequately mitigate the risk his release would present (or that the State failed to prove that it would not). SCRAM monitoring is the use of a transdermal monitoring device that detects the presence of alcohol in the wearer's sweat. *What Is The SCRAM CAM Bracelet And How Does It Work*, https://www.scramsystems.com/scram-blog/what-is-scram-cam-bracelet-how-does-it-work/ (last visited Jan. 24, 2024). Like other types of monitoring, its ability to prevent harm is dependent on the ability of the police to intervene once a violation of the conditions of release is detected; thus, it is not a panacea. Given the violence in this case, it is not unreasonable to conclude that monitoring alone would be insufficient to ensure the victim's well-being.

¶ 27 We cannot conclude that an opposite conclusion to the trial court's that defendant should be detained is clearly apparent. As such, the trial court's decision is not contrary to the manifest weight of the evidence, nor was the decision to detain an abuse of discretion.

¶ 28                                    IV. CONCLUSION

¶ 29 In light of the foregoing, the order of the circuit court of Lake County granting the State's petition to detain defendant is affirmed.

¶ 30 Affirmed.