2024 IL App (4th) 231523

NO. 4-23-1523

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 12, 2024
Carla Bender
4th District Appellate
Court, IL

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JEREMY GOODEN, | ) | No. 23CF405 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justice DeArmond concurred in the judgment and opinion.
Justice Turner specially concurred, with opinion.

**OPINION**

¶ 1        Defendant, Jeremy Gooden, appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), which was recently amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 2                              I. BACKGROUND

¶ 3                    A. The Charges and Initial Detention

¶ 4        On November 13, 2023, the State charged defendant with (1) traveling to meet a child (720 ILCS 5/11-26(a) (West 2022)), (2) indecent solicitation of a child (*id.* § 11-6(c)(3)), and (3) possession of methamphetamine (720 ILCS 646/60(a) (West 2022)). The State alleged that on November 13, 2023, defendant traveled for the purpose of engaging in a sexual offense with a person he believed to be a child after using an Internet service or electronic transmission to solicit

or entice a child. The State further alleged that "defendant, a person 17 years of age or older, with the intent that the offense of Aggravated Criminal Sexual Abuse be committed, by means of the internet knowingly solicited a person whom he believed to be a child to perform an act of sexual conduct or penetration."

¶ 5 On November 14, 2023, the State filed a verified petition to detain. That same day, the trial court conducted a hearing on the State's petition and ordered defendant detained.

¶ 6 B. The December 2023 Hearing

¶ 7 On December 13, 2023, counsel for defendant informed the trial court he had missed the deadline to file a notice of appeal and asked the court for a second detention hearing to "restart the process." The court agreed, noting that it was already going to be conducting a preliminary hearing on that date and the court was required to consider defendant's detention every time he appears in court.

¶ 8 1. *The Preliminary Hearing*

¶ 9 The trial court then conducted a preliminary hearing, at which it heard testimony from Detective Tyler Rafferty of the Fairbury Police Department regarding his investigation that led to defendant's arrest. Rafferty created a fictitious Facebook account in which he purported to be a 14-year-old girl named Ashley.

¶ 10 In early November 2023, a person named Jeremy Gooden contacted that Facebook page, and Rafferty, posing as "Ashley," advised defendant that he was talking to a 14-year-old girl. Rafferty then described in detail for the trial court how defendant's conversation with "Ashley" quickly turned sexual and persisted in that manner over 13 days. In those conversations, Ashley's being 14 years old came up many times, and defendant repeatedly asked for nude

photographs of her and sent Ashley photographs of his genitals. The conversations also covered explicit sexual acts that defendant wished to perform with Ashley.

¶ 11     On November 13, 2023, defendant made arrangements to meet Ashley and informed her that he wanted her to give him oral sex while they were driving around the town in which she lived. When defendant arrived in Fairbury at a prearranged time, Rafferty stopped defendant's car and ultimately arrested him. A search of defendant's vehicle revealed condoms and a substance that tested positive for methamphetamine.

¶ 12     Defendant admitted to Rafferty that he was in Fairbury to meet a 14-year-old girl and admitted that it was a stupid idea to talk to her in a sexual manner. Rafferty also looked at defendant's phone and observed the many conversations that had been occurring between defendant and Ashley.

¶ 13     After hearing Rafferty's testimony, the trial court found probable cause to believe that a felony offense had been committed. Defendant then entered a plea of not guilty, and the court allotted the case for jury trial in February 2024.

¶ 14     2. *The Review of Defendant's Pretrial Detention*

¶ 15     The trial court then turned to the question of defendant's detention, and the State indicated that it did not have any evidence to proffer beyond the proffer it had previously made at the November 14 detention hearing, which was consistent with Rafferty's testimony. Defense counsel similarly did not have any additional arguments or evidence to proffer.

¶ 16     a. The November Detention Hearing

¶ 17     At the November 14, 2023, detention hearing, the prosecutor had proffered what the evidence would show, primarily referring to Detective Rafferty. That proffer was consistent

with Rafferty's testimony at the preliminary hearing on December 13, 2023, although Rafferty's testimony contained more details.

¶ 18   At the November hearing, the State argued as follows:

"I think we have a situation where the Defendant has online contact with this person he believed to be a 14-year-old girl named Ashley. That he did so for sexual purposes. That he traveled from Loda to Fairbury for the purposes of sex. He arranged to bring a condom along. He brought a condom along with him. Also brought methamphetamine along.

I would argue to the Court that's a particular threat to the persons of the community when we have somebody who's bringing condoms and methamphetamine to meet a 14 year old girl that he met online for sexual purposes.

There is a criminal history. That criminal history I acknowledge is from I think 2004, 2005, 2002, so it is an older history, Your Honor. That said, the older history is quite intense. Looking at burglary from I think three different counties, Ford, Champaign, it looks like the Iroquois burglary was reduced to a theft, and some drug paraphernalia as well. So that's, it's a very, it's an older history. However, it is intense.

So the State's position is the Defendant poses a danger to the community, and we ask that he be detained."

¶ 19   In response, defense counsel argued the following:

"[W]e would proffer that in speaking with my client he would agree to comply with any conditions that the Court deems appropriate including reporting to pretrial services, seeking out any evaluations.

- 4 -

I would also proffer that this is a fictitious website, a fictitious Facebook profile operated by a police department. There is no individual named Ashley that actually exists so the threat to any specific person does not exist.

As for argument, Your Honor, we would, in looking at the information contained in the pretrial services report, this was, information was verified by the Defendant's girlfriend. And the, according to that report, my client is employed full-time at United Prairie; and he has, although he had a previous history of substance abuse, he wants or would agree to any drug treatment that the Court feels is appropriate, again, in a pretrial manner. Would agree to report.

He also scored a four on the VPRAI score out of a possible 14. And again, as the State pointed out, his last felony was in 2005; and he got two years['] probation out of Champaign County, which it appears he was, he was successfully discharged from that probation.

So we would, based on all that, Judge, we would argue that the State has not met their burden to show that there is specific articulable facts that shows that the Defendant poses a threat to the community."

¶ 20 After hearing evidence and arguments at the November detention hearing, the trial court ordered defendant detained, noting that although this was a fictitious account, "that doesn't in any way diminish the actions of the Defendant who believed he was meeting with a 14-year-old and actually went to the location with methamphetamine in his possession so presumably to share that with this young girl." The court noted that although this was a fictitious account, "we don't know how many other 14-year-old girls he may have communicated with in the past." The court also stated the following:

"[Defendant] doesn't really have strong ties to the Pontiac area, although it appears that he has strong ties in his local community [of Loda]; and he does have a prior record, albeit an older record.

In this case, if the Defendant is placed on pretrial release with no monetary bond, not only does he have little incentive to comply but the conditions of his release would be only loosely monitored at best by requiring the Defendant to report remotely to a pretrial officer who has little authority and ability to actually confirm what a Defendant tells her."

¶ 21            b. The Trial Court's Findings at the December Hearing

¶ 22            At the conclusion of the December 13, 2023, detention hearing, the trial court again ordered defendant detained and explained that it was adopting the comments that it had made at the prior detention hearing the previous month. The court then further explained its reasoning for ordering defendant's detention, in part, as follows:

"[I]t is my understanding that electronic monitoring is a tool that they have available at this time. However, my understanding of the electronic monitoring is that it would only be able to tell this Court if the defendant left a certain zone within which he is on electronic monitoring for. So, let's, for discussion sake, say that I put him on electronic monitoring and order that he not leave his house[.] [I]t's my understanding that I would not be aware of what he was doing at that house, who he was speaking to, who he was meeting with, what access he may or may not have to cell phones, social media. I don't know whether his house is within a school district or a church. I don't know if there are young children at that home. I would have no ability to keep young children out of that home. So, that's my

understanding as to what can be provided in terms of electronic monitoring by this, by the Office of Statewide Pretrial Services.

\*\*\*

Also in my conversations with the pretrial officer, it's my understanding that short of doing a social media search with the defendant's name and any aliases he provides, it is impossible for her to know or verify that he is staying off of social media; and she also would not know if he has access to young children or would be in communication with any young children.

Now, I fully understand that this defendant is presumed innocent as he sits there and we have been put in a unique position having found by clear and convincing evidence that this defendant did in fact commit this offense, at the same time understanding he's presumed innocent as he sits there[.] [H]owever, I believe it is incumbent upon me to not only be concerned about this defendant's rights but the rights of victims and the community in general and [the inability] to actually monitor this defendant \*\*\*.

\*\*\*

[I could consider a no-contact order with any child under the age of 14, but] that is impossible to monitor; and in this particular case, I cannot ignore the fact that this defendant engaged in conversations with who he believed to be was a 14-year-old girl. \*\*\*

\* \* \*

Having reviewed, again, the Pretrial Investigation Report in this case, I know that the defendant lives some distance from Pontiac[.] \*\*\* [T]o my

knowledge, [the Office of Statewide Pretrial Services] does not have the ability to ensure that this defendant is off of social media while he is on pretrial release, that he is not living near a school, church or other playground location that he will be prohibited from living by as a sex offender, and in fact would not provide any active supervision for this defendant.

So, for all of these reasons, I do find that the defendant's continued detention is necessary to avoid a real and present threat to the safety of the children of Livingston County and I'm going to have the detention order remain in effect."

¶ 23    The trial court then appointed the Office of the State Appellate Defender (OSAD) to represent defendant on appeal, and OSAD has filed a memorandum on his behalf in support of his appeal.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, defendant argues that (1) the State failed to prove that he was a real and present threat to safety and that no condition or combination of conditions could mitigate any threat that he may have posed and (2) the trial court erred by not making written findings summarizing its decision based on specific articulable facts, thereby violating section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)). For the reasons that follow, we disagree and affirm.

¶ 26             A. Defendant's Claim That the State Failed To Prove Defendant Was a Real
                  and Present Threat to Safety and No Condition or Combination of Conditions
                              Could Mitigate Any Threat That He May Have Posed

¶ 27    Because we earlier discussed at length both (1) the arguments of the parties regarding defendant's detention and (2) the trial court's explanation regarding why the court was ordering him detained, we need not repeat that discussion here. Instead, we will simply note that

defendant's first argument amounts essentially to a claim that the trial court abused its discretion when it ordered defendant detained.

¶ 28    As this court explained in *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11, this court's standard of review is whether the trial court abused its discretion. In order to reverse a trial court's decision to deny pretrial release, this court must find that the trial court abused its discretion. *People v. Jones*, 2023 IL App (4th) 230837, ¶ 27. This court explained in *Jones* that an abuse of discretion occurs when the trial court's "decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [trial] court." (Internal quotation marks omitted.) *Id.*

¶ 29    Consistent with that standard of review, we conclude that the trial court did not abuse its discretion by ordering defendant detained.

¶ 30    B. Defendant's Argument That the Trial Court Erred by

Not Making Written Findings Summarizing Its Decision, Thereby Violating

Section 110-6.1(h)(1) of the Code

¶ 31    Defendant points out that the trial court did not make any written findings summarizing its decision based on "specific articulable facts of the case," as required by section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)). Defendant notes that the court instead merely checked the boxes on a preprinted form without making any written findings. Defendant's descriptions of both the statute and the trial court's action are correct, but we reject his argument that the trial court's omission constitutes a basis to reverse its pretrial detention order.

¶ 32    We are aware that section 110-6.1(h)(1) of the Code requires the trial court to enter a written order of detention whenever it orders a defendant detained. Nonetheless, an appellate court should not focus on the trial court's written detention order, which is entered after the hearing

and is supposed to merely summarize the court's reasoning for ordering detention. Instead, the appellate court should focus primarily on the trial court's *oral* ruling and explanations contained therein.

¶ 33    To put it another way, if a trial court's written order of detention fails to include some finding or explanation that is present in the court's oral pronouncement at the detention hearing, that omission from the court's written order of detention does not undermine an otherwise appropriate order of detention based upon those oral pronouncements. That is the situation in the present case, in which the trial court provided a lengthy—and adequate—explanation in open court for its decision to order defendant's pretrial detention.

¶ 34    In support of this position, we cite *In re Madison H.*, 215 Ill. 2d 364, 374-75 (2005), a juvenile neglect case, in which the supreme court construed section 2-27(1) of the Juvenile Court Act of 1987 (705 ILCS 405/2-27(1) (West 2002)), which required a trial court to put in writing the factual basis for its finding at the dispositional hearing that a parent is unfit or unable to care for, protect, train, or discipline his or her child. The supreme court wrote of that requirement as follows:

> "[T]he writing requirement contained in section 2-27(1) exists to give the parties notice of the reasons forming the basis for the removal of the child and to preserve this reasoning for appellate review. Explicit oral findings stated during a dispositional hearing advise the parties of the basis for the removal of the minor and, once transcribed, provide an equal opportunity to review the validity of the findings on appeal as well as written findings contained in an order. Respondent's suggested interpretation of section 2-27(1) [(namely, that a trial court commits reversible error by not providing a written order, as the statute requires)] unnecessarily elevates form over substance and disrupts the adjudication of a minor

for purely technical defects that do not prejudice the parties." *In re Madison H.*, 215 Ill. 2d at 374-75.

¶ 35 Three years later, the supreme court in *In re Leona W.*, 228 Ill. 2d 439, 458-59 (2008), reaffirmed what it wrote in *Madison H.*, writing that in *Madison H.*, "we concluded that where an oral pronouncement is explicit and sufficient to advise the parties of the court's reasoning, the statutory requirement of a written explanation will be satisfied. [Citation.] We believe that rationale applies with equal force here[, which was a termination of parental rights case]."

¶ 36 Recently, the Third District, in *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 11, also an appeal of a pretrial detention order, also cited *Madison H.* for the proposition that "where the transcript and order of the court 'provide an equal opportunity to review the validity of the finding on appeal,' it is sufficient." The Third District in *Hodge* then concluded that "based on the hearing and the court's order, we are able to fully consider the court's decision." *Id;* see *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19, construing the Pretrial Fairness Act: "[W]e hold that an explicit and individualized oral ruling may satisfy section 110-6.1(h)(1)."

¶ 37 Following supreme court guidance, we urge trial courts to fully explain their reasoning at the pretrial detention hearing when they order a defendant detained. See, *e.g.*, *Leona W.*, 228 Ill. 2d at 458, where the supreme court stated the following:

"As noted earlier in this opinion, *** the trial judge's ruling was predicated on stipulated facts that were read into the record, and the court clearly specified the facts it was taking into account in making its decision. The stipulations and the statements were, in turn, transcribed and included in the report of proceedings. There was nothing speculative about the trial judge's actions. What she did and

- 11 -

why she did it were clearly spelled out. The lack of detail in the actual written order therefore worked no prejudice on any of the parties. It was a purely technical defect."

¶ 38 For all these reasons, we reject defendant's argument that the trial court's noncompliance with section 110-6.1(h)(1), which requires a written finding summarizing the trial court's reasons for concluding that a defendant should be detained pretrial, constitutes a basis to reverse the trial court's order of pretrial detention, when the trial court has provided an adequate explanation for its decision in open court at the time of its ruling.

¶ 39                                III. CONCLUSION

¶ 40 For all these reasons, we affirm the trial court's judgment.

¶ 41 Affirmed.

¶ 42 JUSTICE TURNER, specially concurring:

¶ 43 In my view, the last two sentences of paragraph 32 in the majority opinion could be interpreted to be inconsistent with the Pretrial Fairness Act. As such, I do not agree with the inclusion of those sentences in the majority opinion.

*People v. Gooden*, 2024 IL App (4th) 231523

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Livingston County, No. 23-CF-405; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, Abigail Hogan Elmer and Jasmine Guerrier (law student), of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |