2024 IL App (4th) 240894-U

NO. 4-24-0894

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
September 24, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| CATHY ANN LOGAN, | ) | No. 23CF711 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Vespa, |
| | ) | Judge Presiding. |

---

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court vacated the trial court's order denying defendant pretrial release where the trial court failed to make sufficient findings and remanded for a new detention hearing.

¶ 2    Defendant, Cathy Ann Logan, appeals the trial court's order entered June 13, 2024, denying her pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). For the following reasons, we vacate the order and remand for a new detention hearing.

¶ 3                                      I. BACKGROUND

¶ 4　　　　On September 5, 2023, defendant was charged by indictment with first degree murder (720 ILCS 5/9-1(a)(2) (West 2022)) for the death of Tanazisha Green. According to the indictment, on or about August 10, 2023, defendant stabbed Green without legal justification, knowing her conduct created a strong probability of death or great bodily harm to Green, and thereby caused Green's death. A warrant was issued for defendant's arrest, and a $1 million (10%) cash bond was set. Defendant was arrested on September 5, 2023, and remains in custody.

¶ 5　　　　On March 19, 2024, defendant filed a motion to reconsider the conditions of her pretrial release pursuant to the Code. On March 20, 2024, the State filed a verified petition to deny pretrial release under section 110-6.1(a)(1.5), (8) of the Code because defendant was charged with a forcible felony, her pretrial release would pose a real and present threat to the safety of the community, and she had a high likelihood of willful flight to avoid prosecution. 725 ILCS 5/110-6.1(a)(1.5), (a)(8) (West 2022).

¶ 6　　　　The trial court held a detention hearing on May 16, 2024. Defendant, who was 54 years old at the time, testified that while in custody, she had been participating in a reentry program with the SMART Recovery Intervention Center. If released, defendant stated she would live with her daughter and return to her job cleaning for a local restaurant. She stated that she also has custody of her 14-year-old granddaughter and would continue to care for her. Defendant testified her daughter has a car and would drive her to court. She also explained she has an artificial left eye, which was infected due to a recent reinjury, and it was causing her pain and required medical treatment. She stated the jail was unable to provide her with treatment. On cross-examination, defendant acknowledged she had been incarcerated twice. She stated she never failed to appear in court; however, when asked again, she acknowledged there were two occasions when she failed to appear on "petty charges."

¶ 7　　　　　The State proffered, based on video surveillance and eyewitness reports, the following description of events that occurred between defendant and Green outside a Peoria gas station on August 10, 2023. Defendant walked up to Green, and Green raised her hands as if to "defend herself in a boxing type manner." Defendant struck Green twice in the chest with a stabbing motion and retreated. Green took a few steps and collapsed on the ground, and several people approached to assist her. Defendant picked up what appeared to be a knife and fled the scene. The State argued this is a "very serious case" based on the "nature and circumstances of the offense, along with the history and character of the defendant." Referring to "the party data sheet" (a document not made part of the record), defendant failed to appear and bench warrants were issued in February 2015, March 2019, September 2020, August 2021, December 2021, and October 2022. The State noted defendant had been to the "Department of Corrections on multiple occasions" and asked if the trial court wished him to "recite the extensive criminal history of the defendant." The court replied, "No, thanks," and denied defendant's motion. The court ordered defendant to remain in custody and the jail to be instructed to provide defendant medical care for her eye ailment. The standard form order entered that day denying defendant's motion stated, "Proffers, arguments, and court's findings made on the record," and "[the Peoria County Jail] shall provide all necessary medical attention to the defendant."

¶ 8　　　　　On May 20, 2024, defendant filed a motion entitled "Defendant's Motion for Relief pursuant to Rule 604(h) [(Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024))]," seeking the trial court's reconsideration of its decision to deny her pretrial release. Defendant contended the court failed to make findings regarding the "dangerousness provision" or the "Willful Flight Standard" to support its decision to deny her pretrial release. Defendant alleged she was not a flight risk, explaining that if released, she would continue to reside in Peoria with her family, be employed

by a local restaurant, and have transportation to court. Defendant reminded the court that she has custody of her granddaughter and pretrial release would allow her to continue to care for the child. Defendant also reminded the court of her eye injury that required medical attention, which had not yet been provided by the jail. Defendant alleged there were reasonable alternatives to detention, including GPS monitoring and geographical limits to her movements.

¶ 9        A hearing was held on June 13, 2024. The State acknowledged there was no pretrial services report completed in this case. Defendant testified about her ongoing medical issues with her eye. She has been given eye wash and Vaseline while in jail, but these treatments had not resolved her problem because she needed surgery. Defendant explained that she had a doctor and medical coverage for the surgery. Defendant restated her plans regarding her living arrangements and employment if released. On cross-examination, defendant stated she had missed court five times between 2007 and 2022. Defendant said the most recent injury to her eye was the result of getting punched in August, when she also had "teeth knocked out." She stated, "All this has something to do with the case." The trial court stopped defendant from speaking further about the incident out of concern for her right against self-incrimination. Defendant was asked whether she had been in contact with her eye doctor while in custody. She replied she had asked for the doctor's mailing address so she could write him a letter. She also had been asking the nurse practitioners at the jail for assistance, and they told her there was nothing more they could do because the jail did not have an eye doctor.

¶ 10        The State restated its proffer regarding the attack on Green and argued defendant was a danger to society based upon the incident and "she's not likely to follow any conditions that the Court has put on her because she has failed on multiple other occasions and failing to listen to the Court's order and actually showing up to court." Defense counsel argued defendant

- 4 -

was not a flight risk because she is fully aware of the charges, was of limited means, and would be staying with her daughter if released. Defendant continued to need medical treatment she has not received while in jail. The trial court interjected: "I've been told at least twice by [defendant] that she's receiving Vaseline and one or two other things," which the court considered to be medical treatment. Defense counsel stated:

> "I'm asking the Court to reconsider its previous ruling and I would simply request that, in reading the statute for the detention just request that there's a very specific finding as to either the dangerousness standard or willful flight standard. I understand the Court at the last hearing denied my motion, but it needs to be clear as to the rationale as to why the Court is making its finding. Thank you."

¶ 11    In denying defendant's motion to reconsider, the trial court stated:

> "All I know about the alleged offense is that [defendant] came up out of nowhere—and I don't know that she did this. I mean, feel free to give your version of events, [defense counsel], but from what [the] State just said they have video of her just walking up to some random person—and this is where I don't want to hear from [defendant]—walks up to somebody and starts stabbing her.
>
> Is there anything more you'd like me to know about that, [defense counsel]?"

Defense counsel replied, "No," and the court continued:

"Then I make a finding that she is sufficiently dangerous to the community. That she might walk up and start stabbing somebody else if I don't keep her in custody. When people don't appear in court which [defendant] has done five or six times, as far as I know they're not here because they fled and maybe that was, in fact, the case those five or six times. I don't know.

The evidence I have in front of me is that she has five or six failures to appear. I don't know if those were for fleeing or not which worries me that she is a willful flight person. Someone who would do that. But I think my finding as to dangerousness is sufficient, is that right, State?"

¶ 12    In response, the State referred to the requirements of the Code and explained: "The order, or, the finding of detention indicates that the proof is evident or the presumption is great that the defendant has committed a qualifying offense which first degree murder is one. Based on the Court's, or with what the Court has just said I think that has been shown. That the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific and articulable facts of the case ***.

I believe the Court has just indicated that's been shown and that no condition or combination of conditions

can mitigate the real and present threat for the safety of any person or persons. I believe the Court has indicated that has been shown by the defendant's failures and other aspects of other court cases. So, yes, I believe that has been stated sufficiently on the record."

¶ 13 The trial court responded that it was searching for the language regarding "no less severe conditions," and defense counsel added:

"If I may, part of the detention requirements, and [the State] started talking about it, but the Court has to make a finding in light of listening to what you just said that there's no condition or combination of conditions that can mitigate the real and present threat to the safety of any person or persons. So, in addition to the qualifying offense and the real and present threat to the safety of any person or persons of the community, based on the specific articulate [*sic*] facts, the Court also has to find that there's no condition that can mitigate that."

¶ 14 The trial court denied defendant's motion, concluding, "I'm finding what you have both told me. That's my finding. The language you two used is my finding. If I didn't get it right when I tried to recall what you said, use your own language."

¶ 15 The written order entered on June 13, 2024, was a standard form order which indicated that the trial court found by clear and convincing evidence that defendant met both the dangerousness standard (725 ILCS 5/110-6.1(a)(1)-(6) (West 2022)) and the willful flight standard (725 ILCS 5/110-6.1(a)(8) (West 2022)). Under both standards, the order stated, "The Court's written findings are as follows: made on the record."

¶ 16        This appeal followed.

¶ 17                    II. ANALYSIS

¶ 18        Defendant argues the trial court erred in denying her pretrial release because the State failed to present sufficient evidence to overcome the presumption of release and the court failed to comply with section 110-6(h)(1) of the Code by not issuing any specific written or oral findings on the conditions of release. See 725 ILCS 5/110-6(h)(1) (West 2022).

¶ 19        Under the Code, it is presumed that all criminal defendants are entitled to pretrial release on personal recognizance, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). The State may petition for pretrial detention of a defendant if the defendant is charged with a detainable offense as enumerated in the Code and, after a hearing, the trial court finds the defendant's release would pose "a real and present threat to the safety of any person or person or the community, based on the specific articulable facts of the case" or the defendant "has a high likelihood of willful flight to avoid prosecution." 725 ILCS 5/110-6.1(a)(1), (8) (West 2022). The State has the burden to prove by clear and convincing evidence that any condition of pretrial release is necessary. 725 ILCS 5/110-2(b) (West 2022).

¶ 20        If the trial court decides to deny pretrial release, the detention order must include:

"[W]ritten finding[s] summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(h)(1) (West 2022).

- 8 -

In considering the sufficiency of the trial court's findings regarding pretrial release, "its written findings must be read in conjunction with its oral pronouncements." *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19; see *People v. Gooden*, 2024 IL App (4th) 231523, ¶ 33.

¶ 21    We review the trial court's decisions and findings on issues of pretrial detention under the Code for an abuse of discretion. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35. An abuse of discretion occurs when the trial court's decision is "arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court [citations]." *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 22    We conclude the trial court's findings were insufficient for this court to conduct a meaningful review in this case. The written order contains no specific findings and, instead, expressly refers to the ruling "made on the record." A review of the transcripts reveals that the court did not provide sufficient detail regarding the basis for its decision to deny defendant pretrial release. The court was asked if it wanted to consider information regarding defendant's background. In such a serious case, we find it concerning that the court replied, "No thanks." Most notably, the court did not address any less restrictive conditions of release (including GPS monitoring and further restrictions on movement which were proposed by defendant) or state any findings supporting its conclusion that "no less severe conditions" were possible. Furthermore, the court seemed uncertain of the standard for deciding pretrial release under the Code and relied upon the statements of counsel as its findings, stating, "If I didn't get it right when I tried to recall what [the attorneys] said, use your own language." Absent adequate findings from the trial court, we are unable to address the sufficiency of the facts underlying the court's decision to deny defendant pretrial release. As this court previously admonished, "Our own obligation to afford meaningful review under the Code thus relies on the trial court conducting a full and fair

evaluation of the evidence and showing its work; otherwise, we cannot 'agree' with its detention order." *People v. Martin*, 2023 IL App (4th) 230826, ¶ 25.

¶ 23 Accordingly, we conclude the trial court abused its discretion by failing to make a record adequate to allow meaningful review of its exercise of discretion. We vacate the order denying defendant pretrial release and remand with directions for the court to promptly set a new detention hearing, at which the State can present evidence and the court can make its findings as required by the Code. See 725 ILCS 5/110-6.1 (West 2022). In light of this disposition, we need not address defendant's challenge to the sufficiency of the State's proffered evidence at the first detention hearing.

¶ 24 III. CONCLUSION

¶ 25 For the reasons stated, we vacate and remand the trial court's judgment.

¶ 26 Vacated and remanded.