NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241358-U

NOS. 4-24-1358, 4-24-1359, 4-24-1360 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 17, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| RICO JEFFERSON, | ) | Nos. 19CF2295 |
| Defendant-Appellant. | ) | 21CF357 |
| | ) | 22CF1559 |
| | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Harris and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, finding the circuit court did not abuse its discretion in denying defendant pretrial release.

¶ 2     Defendant, Rico Jefferson, appeals the circuit court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). On appeal, defendant argues the court erred in finding the State proved by clear and convincing evidence the proof was evident or presumption great he committed a detainable offense, posed a safety threat to any person,

persons, or the community, and presented a risk of willful flight, and no condition or combination of conditions could mitigate that safety threat or prevent his willful flight. We affirm.

¶ 3                                                I. BACKGROUND

¶ 4            This appeal concerns the charges brought against defendant in Winnebago County case Nos. 19-CF-2295, 21-CF-357, and 22-CF-1559. In case No. 19-CF-2295, the State charged defendant with home invasion (720 ILCS 5/19-6(a)(2) (West 2018)), aggravated domestic battery (720 ILCS 5/12-3.2, 3.3(a-5) (West 2018)), and criminal trespass to a residence (720 ILCS 5/19-4(a)(2) (West 2018)). In case No. 21-CF-357, the State charged defendant with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2022)). In case No. 22-CF-1559, defendant was indicted by a grand jury with six counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2020)). On May 7, 2024, defendant filed a "Notice of Election" in which he chose to have his cases processed pursuant to the Act, and the State filed a responsive "Petition to Deny Pretrial Release" the following day.

¶ 5            According to the probable cause statement in case No. 22-CF-1559, on October 22, 2020, officers responded to the residence of Tiauna Woods, where they discovered the lifeless body of Maurice Simmons, dead from a gunshot wound. Woods told officers Simmons had been "concerned about his safety" because others believed he was responsible for the murder of defendant's brother, Russell Jefferson, and it was rumored there was a "large bounty" on Simmons in retaliation. Based on phone calls made by Simmons's brother while incarcerated, the bounty was for $50,000. Officers received a phone call from Simmons's father asserting defendant murdered Simmons.

¶ 6            The probable cause statement also described the events from which the charges in

case No. 21-CF-357 arose. On February 24, 2021, officers responded to the scene of a shooting, where individuals in two separate cars exchanged gunfire. Shortly after the shooting, defendant and Rashaun Jefferson, who was also Russell Jefferson's brother, arrived at a local hospital in a Toyota Camry to receive treatment for gunshot wounds. The subsequent investigation showed defendant and Rashaun exchanged gunfire with an unknown subject, during which they sustained their injuries. Officers executed a search warrant on defendant's cell phone and discovered the device's location history was turned on. The location history indicated defendant's phone was "directly behind (south)" of the residence where Simmons was murdered four minutes before Woods called 911.

¶ 7        On May 9, 2024, the circuit court conducted a detention hearing. The State proffered that, in case No. 19-CF-2295, officers spoke with defendant's then-girlfriend, Terrica Lee, who said she awoke to find defendant inside her home. The two began to argue, and defendant said, "[B]itch, I'm going to kill you." Defendant then grabbed Lee's neck with both hands and choked her until she could not breathe. Lee recalled waking up when defendant picked her up by her hair and began hitting and kicking her. As the beating continued, defendant choked Lee until she lost consciousness two more times, and he shouted, "I'm going to kill you."

¶ 8        The State proffered that, in case No. 21-CF-357, officers responded to a "shots fired" call. An eyewitness told officers she observed two cars, one black and one white, turn onto the same street. The black car stopped, and two men got out. One of the men pulled out a handgun and opened fire at the white car. The passengers in the white car returned fire. The witness then observed one of the two men lying on the ground, and the other picked him up and placed him in the back seat of the black car. Another witness identified the black car as a Toyota Camry. Surveillance video showed the black car went from the scene of the shooting to a nearby

hospital, and two men with gunshot wounds exited the vehicle. Defendant was identified as the driver. The circuit court advised the State it reviewed the factual summary of case No. 22-CF-1559.

¶ 9        At the subsequent hearing on May 14, 2024, the circuit court found the State proved by clear and convincing evidence the proof was evident or presumption great defendant committed detainable offenses, he posed a real and present threat to the community, and less restrictive means than detention would not mitigate that threat or prevent defendant's willful flight. The court noted each case involved a detainable offense. The court acknowledged defendant raised issues that might cause the trier of fact to conclude reasonable doubt existed regarding the charges. However, the court emphasized defendant was charged in case No. 19-CF-2295 while on bond for earlier offenses, and he failed to appear in court on September 5, 2019, on aggravated fleeing charges. Defendant also failed to appear on other pending charges on July 12, 2022. Defendant later pleaded guilty to aggravated fleeing in a separate case. According to the pretrial services report, defendant's criminal history included three firearm-related juvenile adjudications and a 2012 misdemeanor conviction for fleeing. Ultimately, the court asserted it relied on the serious nature of the charged offenses, the fact that defendant was on bond or parole when the charges were brought, defendant's history of committing offenses involving firearms and fleeing from law enforcement, and defendant's failure to appear at two different hearings, after which he "had to be located to be served with warrants."

¶ 10        Several months later, on October 1, 2024, the circuit court entered a detention order, which reiterated the court's finding that no conditions or combination of conditions would mitigate the threat defendant posed to the community or prevent his willful flight based on "the nature of the offenses, the fact that the defendant was on bond or parole at the time of each

- 4 -

offense, the defendant's prior record of weapon and fleeing offenses, and the fact that the defendant failed to appear at least two times."

¶ 11 Defendant filed his initial motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) on September 9, 2024, and he filed amended motions on September 25, 2024, and October 11, 2024. Defendant's second amended motion argued the State did not prove by clear and convincing evidence he committed a detainable offense, he posed a real and present threat to any person, persons, or the community, and he posed a willful flight risk, and no release conditions could negate the threat he posed to others or prevent his willful flight. The motion insisted, "There was no proof evident that the allegations the Defendant is charged with were committed or committed by him," and, "The Court did not make a finding, express or otherwise, that the State proved by clear and convincing evidence that the proof was evidence or presumption great that the Defendant committed an offense." The motion argued defendant was not a threat to other persons or the community because, *inter alia*, the proffered eyewitness description of the two men in case No. 21-CF-357 did not match defendant's hairstyle as seen in surveillance video, and police were investigating another suspect with a "clear motive" in case No. 22-CF-1559. The motion alleged the State's proffer consisted of bare allegations he committed violent offenses. The motion argued the circuit court erred in finding defendant presented a flight risk because his previous failures to appear for court dates were "isolated instances," he "attended many more court appearances than he missed," and the evidence against him was "so deficient" he had no reason to flee. The motion also contended the court erred by not entering its written detention order until October 1, 2024.

¶ 12 On October 11, 2024, the circuit court conducted a hearing on defendant's second amended motion for relief. Defendant argued "all of the State's evidence *** at the detention

hearing can be equally contradicted, resulting in that evidence essentially being a wash." The court denied the motion, emphasizing it could not weigh the testimony of witnesses that had not yet appeared and refusing to wade into issues of credibility at this stage of the proceedings, where the evidence was presented by proffer. The court found the State "presented evidence which, if believed, can support" the charges brought against defendant.

¶ 13    This appeal followed.

¶ 14                        II. ANALYSIS

¶ 15    On appeal, defendant argues the circuit court erred in denying him pretrial release. For the following reasons, we affirm.

¶ 16    Under the Code, it is presumed all criminal defendants are entitled to pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). Before the State may overcome that presumption and secure pretrial detention of a criminal defendant under section 110-6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)), the State must show "the proof is evident or the presumption great that the defendant has committed" an offense described in section 110-6.1(a). 725 ILCS 5/110-6.1(e)(1) (West 2022). The State must also show "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(2) (West 2022). Finally, the State must show no condition or combination of conditions can mitigate the real and present threat defendant's release poses to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(e)(3)(i) (West 2022). The determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35. A circuit court abuses its discretion when its decision

is unreasonable, arbitrary, or fanciful, or when no reasonable person would agree with its decision. *Morgan*, 2024 IL App (4th) 240103, ¶ 13.

¶ 17　　　　The circuit court did not abuse its discretion in denying defendant pretrial release. The State charged defendant with a detainable offense in each of the cases below—aggravated domestic battery in case No. 19-CF-2295, aggravated discharge of a firearm in case No. 21-CF-357, and first degree murder in case No. 22-CF-1559. See 725 ILCS 5/110-6.1(a)(1), (1.5), (4) (West 2022). The State proffered defendant choked his then-girlfriend until she became unconscious three times, hit her, kicked her, and twice threatened to kill her. The State also proffered surveillance cameras showed defendant and his brother Rashaun arriving at a hospital with gunshot wounds in the same vehicle that was involved in a gunfight mere minutes earlier. The record shows the court reviewed the factual summary of case No. 22-CF-1559, which alleged Simmons was believed to have killed Russell Jefferson, one of defendant's brothers, it was rumored a large bounty was placed on Simmons, defendant's cell phone location history indicated his phone was located "directly behind" the residence where Simmons was murdered just four minutes before the 911 call reporting the murder was made, and Simmons's father told law enforcement he had been told defendant murdered Simmons. Based on the State's proffer and factual summary, the court did not abuse its discretion in finding the proof was evident or presumption great that defendant committed several detainable offenses.

¶ 18　　　　The circuit court also did not err in finding defendant posed a safety threat to any person, persons, or the community and presented a risk of willful flight. In addition to the State's proffer and factual summary, the record shows defendant failed to appear for two different court dates during the pendency of the cases below, and his criminal history included multiple offenses involving firearms and fleeing from law enforcement. When announcing its findings, the court

emphasized the serious nature of the charged offenses, the fact that defendant allegedly committed the offenses while on bond or parole, and defendant's history of committing offenses involving firearms. All these are proper considerations for a dangerousness determination. See 725 ILCS 5/110-6.1(g)(1), (2), (7), (8) (West 2022). The court further found defendant presented a risk of willful flight, and no condition or combination of conditions would mitigate his dangerousness or his flight risk based on his criminal history, which included convictions for fleeing from law enforcement, and his failure to appear on two different occasions during the pendency of the cases below. For these reasons, it was clear defendant was unlikely to comply with any conditions or orders imposed by the court upon release and, accordingly, the court's decision was not an abuse of discretion. See *Morgan*, 2024 IL App (4th) 240103, ¶ 13. Defendant's arguments to the contrary lack merit.

¶ 19 The record resoundingly contradicts defendant's contention the State's proffers failed to show the proof was evident defendant committed detainable offenses or that he posed a real and present threat to any person, persons, or the community. As detailed above, the State made an ample and sufficient proffer showing the proof was evident or presumption great defendant committed multiple detainable offenses and presents a significant safety threat to both his former girlfriend and the larger community. The contents of defendant's second amended motion for relief suggest he is displeased with the circuit court's decision regarding the parties' respective proffers, and defendant, in effect, asks us to reweigh the proffered evidence on appeal. We will not. See *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44.

¶ 20 Similarly, defendant insists the circuit court erred in finding he presented a risk of willful flight, quoting section 110-1(f) of the Code (725 ILCS 5/110-1(f) (West 2022)) to assert, " 'Isolated instances of nonappearance in court alone are not evidence of the risk of willful

flight.' " This argument is likewise unavailing. Not only did defendant fail to appear in court twice during the pendency of the cases below, which required law enforcement to locate him and serve him with warrants, but defendant's criminal history also includes multiple fleeing offenses.

¶ 21 As a final matter, the circuit court did not demonstrate best practices by not entering a written detention order until October 1, 2024, several months after detention hearing on May 14, 2024. However, reversal is not warranted. While section 110-6.1(h)(1) of the Code (720 ILCS 5/110-6.1(h)(1) (West 2022)) requires a circuit court to enter a written detention order when it orders a defendant detained, we have found, where a written order is lacking or deficient, an appellate court "should focus primarily on the [circuit] court's oral ruling and explanations" rather than the written order, "which is entered after the hearing and is supposed to merely summarize the court's reasoning for ordering detention." (Emphasis omitted.) *People v. Gooden*, 2024 IL App (4th) 231523, ¶ 32. In *Gooden*, 2024 IL App (4th) 231523, ¶ 35, we quoted our supreme court's finding in *In re Leona W.*, 228 Ill. 2d. 439, 458 (2008), which confirmed, "where an oral pronouncement is explicit and sufficient to advise the parties of the court's reasoning, the statutory requirement of a written explanation will be satisfied." *Leona W.* considered a statutorily required written explanation in the context of the termination of parental rights, but the same principle applies here. See *Gooden*, 2024 IL App (4th) 231523, ¶¶ 33-38; *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶¶ 19-22 (finding the court's oral ruling was "explicit and individualized" and "sufficient to apprise the defendant of the reasons for its ruling and to accommodate review under the Act"). Here, the court's oral pronouncement at the conclusion of the hearing on May 14, 2024, was sufficiently explicit and detailed to apprise defendant of the reasons for its decision and to accommodate review under the Act, and it "honored the purpose and provisions of the statute." *Andino-Acosta*, 2024 IL App (2d) 230463,

¶ 22. We will not apply a " 'formalistic technical' reading of the act," and we find reversal would not serve the interests of justice, as defendant does not identify any prejudice caused by the order's delayed filing. *Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 22 (quoting *In re Madison H.*, 215 Ill. 2d 364, 375 (2005)).

¶ 22 For the reasons stated above, the record supports the circuit court's finding the State showed by clear and convincing evidence the proof was evident or presumption great that defendant committed a detainable offense, posed a real and present threat to the safety of any person, persons, community, and presented a risk of willful flight. This was established by the violent nature and circumstances of the offenses charged, the fact that defendant was charged with these offenses while on bond or parole, defendant's criminal history, his multiple failures to appear in court, and his convictions for fleeing from law enforcement. See 725 ILCS 5/110-6.1(g)(1), (2), (7), (8) (West 2022). The court also did not abuse its discretion in finding less restrictive conditions would not avoid the safety threat defendant posed or prevent his willful flight. Therefore, the court's decision was not arbitrary, fanciful, or unreasonable, and no abuse of discretion occurred. See *Morgan*, 2024 IL App (4th) 240103, ¶ 13.

¶ 23                                    III. CONCLUSION

¶ 24 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 25 Affirmed.