NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240270-U

NO. 4-24-0270

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| LAWRENCE DUSHON JOHNSON, | ) | No. 24CF59 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2   Defendant, Lawrence Dushon Johnson, appeals the trial court's order denying him pretrial release under sections 110-6.1(a)(1) and 110-6.1(a)(6) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1), (6) (West 2022)), hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3                     I. BACKGROUND

¶ 4   On January 17, 2024, the State charged defendant with three offenses based on events occurring on August 6, 2023: unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), two counts of aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(2)), reckless discharge of a firearm (*id.* § 24-1.5(a)), and violation of the Firearm Owners Identification

(FOID) Card Act (430 ILCS 65/2(a)(1) (West 2022)).

¶ 5        On January 24, 2024, the State filed a verified petition to deny defendant pretrial release under sections 110-6.1(a)(1) and 110-6.1(a)(6) of the Code (725 ILCS 5/110-6.1(a)(1), (6) (West 2022)). The State alleged defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community.

¶ 6        That same day, a hearing was held on the State's petition. At the hearing, the State read a probable-cause statement. According to the statement, around 3:30 a.m. on August 6, 2023, Normal Police Department officers responded to gunfire on Lindell Drive. A large group of people congregated for an outdoor block party. Multiple shooters were reported. Eight nearby vehicles and three apartments were struck by bullets. Two individuals suffered gunshot wounds. One was shot in the thigh. The other's head was grazed by a bullet. On August 9, 2023, an employee of Enterprise Rent-A-Car reported a Ford Escape, rented by Donald Wheatley, was returned with bullet-hole damage. Wheatley reported he rented the vehicle for a friend, Kelsey Voehgtly. We note Kelsey's last name appears in the record as "Voehgtly" and "Voeghtly". For this disposition, we will use "Voehgtly", as that is how the State spelled her name at the detention hearing. On August 24, 2023, police talked to Voehgtly, who reported she was intoxicated that night and did not remember much. She recalled going with defendant, defendant's girlfriend Caravina Jones, and Iyeshia Anderson to bars and then to a block party.

¶ 7        The State further reported the GPS for the rented Escape revealed the Escape went to Voehgtly's residence and then to defendant and Jones's residence on North Golfcrest Road. The Escape next went to Pub II in Normal, Illinois, around midnight, and then to Huck's and Cadillac Jack's. Videos show defendant, Anderson, Jones, Voehgtly, and Ayesha Yacub walking from the rented Escape into Pub II and then, around 12:30 a.m., into Cadillac Jack's.

The videos further show the Escape at North Golfcrest at 2 a.m. and at Lindell Drive just before 3:30 a.m., the time of the shootings. Shortly after 3:30 a.m., the Escape returned to defendant's residence.

¶ 8 According to the State, two anonymous callers identified defendant as a shooter. One identified defendant as the first to fire shots. Several video cameras captured images of the shooting. Around 3:30 a.m., defendant exited a car and walked west on Lindell Drive. Around that time, several men with guns exited a Dodge on Lindell Drive. Gunshots were heard.

¶ 9 On October 26, 2023, defendant admitted to police he was with Jones and Yacub on August 6. He confirmed they went to Cadillac Jack's and he was on Lindell Drive when the shooting occurred. Defendant reported at least 10 shooters. Defendant denied being one of them.

¶ 10 On November 9, 2023, Yacub informed police she was with defendant, Jones, and Voehgtly on August 6, 2023. They went to Eric Too's but left after an altercation. Defendant learned people with whom he had an altercation at Eric Too's were at a party on Lindell Drive. Defendant told Yacub he was getting his gun and going to Lindell Drive. Yacub reported at least 400 people were outside. Yacub exited the vehicle first. Defendant exited with his gun. Yacub watched defendant fire his gun, which she described as "large" and equipped with a light. Defendant emptied the clip and returned to the car. The State asserted defendant was ineligible for a FOID card due to his conviction for mob action in McLean County case No. 16-CF-748.

¶ 11 The State reported defendant had a criminal history, which included the following: misdemeanor theft in 2004, misdemeanor attempted resisting a peace officer in 2006, driving without a valid license in 2007, driving on a suspended license in 2015, driving with a revoked license in 2023 (McLean County case No. 23-MT-1511), a Class 4 felony conviction in 2007 for resisting a peace officer, a Class 3 felony conviction in 2008 for aggravated battery, a

federal conviction in 2010 for cocaine possession, a Class 4 felony conviction in 2016 for a mob-action offense, misdemeanor domestic battery in 2018, fleeing or attempting to elude a peace officer in 2019, and a misdemeanor in 2018 for driving under the influence. At the time defendant allegedly committed the charged offenses, he was on pretrial release for McLean County case No. 23-CF-967, aggravated fleeing or attempting to elude a peace officer and driving while license suspended.

¶ 12        In response, defense counsel proffered defendant was 35 years old and a resident of McLean County for over 20 years. Defendant was employed full-time at Rivian and provided for his mother and his seven children, five of whom resided with him. Defendant had medical issues, including insomnia and grief. Ten of his family members had died in a span of two years. Defense counsel reported defendant successfully completed the sentences imposed for his offenses, including court supervision in multiple cases, prison sentences, and probation. Defense counsel highlighted he was not on conditional discharge for the 2023 driving-while-license-revoked conviction when the alleged offenses were committed in August 2023. Counsel proffered the conditional discharge for that case began on September 14, 2023. Defendant had no instances of failing to appear in two years.

¶ 13        In argument, defense counsel emphasized the State overlooked police reports that indicated the video evidence shows only what "appears to be" defendant with what "appears to be" a gun. In addition, after officers read defendant his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant stated he did not understand but the interview continued without an explanation of those rights. Defendant denied possessing a gun. Yacub had a motive to implicate defendant as a shooter as she and defendant were previously in a relationship. Defendant also volunteered in the community, operating a nonprofit organization, "Growth

Peace Unity."

¶ 14       In granting the State's petition, the trial court found the State clearly and convincingly proved the proof evident or presumption great defendant committed a detainable offense. The court found the State sufficiently proved defendant was a real and present threat to the named victims and to the community and the threat could not be mitigated with conditions. The court based its findings "on the specific articulable facts of this case." The court granted no-contact orders with Yacub and Voeghtly.

¶ 15       Using a preprinted form, the trial court entered a written order finding the State proved the dangerousness standard by clear and convincing evidence. Under "Less Restrictive Conditions Ineffective," the court checked boxes finding "Community/Individual safety cannot be meaningfully achieved with available conditions of pretrial release," "There is a high likelihood that Defendant will commit new criminal offenses if granted pretrial release," "Defendant has access to, and likely would attempt to use, a dangerous weapon against others if released," and "Defendant has a history of *** thwarting/frustrating release/supervision conditions."

¶ 16       This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18       On February 14, 2024, defendant filed a notice of appeal challenging the order denying him pretrial release under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023). Defendant's notice of appeal is a completed form from the Article VI Forms Appendix to the Illinois Supreme Court rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which he asks this court to grant him pretrial release. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." Defendant checked three

grounds for relief and inserted language after these grounds. Defendant also filed a supporting memorandum.

¶ 19        The first checked ground for relief is "The State failed to meet its burden of proving by clear and convincing evidence no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community." On the lines under the preprinted text, defendant wrote the following:

> "The State proffered evidence that [defendant] was a threat to the safety of the community because of video footage and a witness' statement. According to the police report, footage only appears to show that [defendant] was holding a firearm. It is not definitive that he was. The footage also does not show [defendant] discharging the item that appeared to be a firearm. The witness who provided a statement to police was in a relationship with [defendant] that he has now ended. Defense proffered that the witness' statements may be motivated by wrong motives."

In his supporting memorandum, defendant argues the State failed to explain why the threat could not be mitigated by any conditions of release and the trial court failed to explain in writing or orally why certain conditions of release could not mitigate the threat. Defendant further maintains the State misrepresented defendant was on pretrial release when the offenses in this case were committed and the court, when ordering defendant detained, improperly relied on that misrepresentation. Defendant contends he was placed on pretrial release in McLean County case No. 23-CF-967 on September 14, 2023, but the offenses charged in this case occurred on August 6, 2023.

¶ 20      Under the Code, all criminal defendants are presumed eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Before the State may overcome that presumption and secure pretrial detention of a criminal defendant under the dangerousness standard, the State must prove multiple factors by clear and convincing evidence. One such factor is no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community. See *id.* § 110-6.1(e)(3). Recently, we reaffirmed that we review a trial court's decision and findings on pretrial-detention issues under the abuse-of-discretion standard. *People v. Morgan*, 2024 IL App (4th) 240103, ¶¶ 18-23, 35 (finding the manifest-weight-of-the-evidence standard inappropriate for review of pretrial-detention orders).

¶ 21      We disagree with defendant's argument the trial court did not explain its reasons for finding the State clearly and convincingly proved no condition or combination of conditions can mitigate the threat defendant poses to a person or persons or the community. At the hearing, the court stated it made the finding "based on the specific articulable facts of this case." In the written order, under the following preprinted text stating, "Less restrictive conditions would not avoid a real and present threat to the safety of any person(s) or the community, *** for the following reasons:" the court checked four boxes, including finding a high likelihood existed defendant would commit new criminal offenses if granted pretrial release, defendant had access to and would likely attempt to use a dangerous weapon against others, and defendant had a history of "thwarting/frustrating release/supervision conditions." Given defendant's history, which includes violent offenses and the prohibition against him possessing a firearm, and the circumstances of the offense, in particular defendant's decision to retrieve a weapon, follow individuals with whom he had an altercation, and fire a weapon into a crowd of people, the court's conclusions find support in the record.

¶ 22　　　　Defendant cites *People v. Atterberry*, 2023 IL App (4th) 231028, ¶¶ 17-18, and further alleges the failure to discuss whether orders of protection, electronic monitoring, and home detention would mitigate the threat defendant poses to the community renders the trial court's order of detention deficient. In *Atterberry*, we found the "totality of the trial court's comments compels the conclusion that the court failed to, and refused to, consider and apply the proper statutory criteria." *Id.* ¶ 16. This court mentioned the trial court's failure to discuss electronic monitoring only in support of the conclusion the trial court did not consider proper criteria. *Id.* ¶ 17. The *Atterberry* court did not find the Code requires explicit consideration of each statutory condition before finding mitigation of the threat cannot be achieved.

¶ 23　　　　We also disagree with defendant's claim the State misrepresented he violated pretrial-release conditions when the alleged offenses were committed. The record shows defendant was charged in 2023 with two offenses related to his not being licensed to drive. In McLean County case No. 23-MT-1511, defendant was convicted of driving with a *revoked* license. In McLean County case No. 23-CF-967, defendant was charged with aggravated fleeing or attempting to elude a peace officer and driving with a *suspended* license. When defense counsel proffered defendant was sentenced to conditional discharge on September 14, 2023, she mentioned "conditional discharge" and the offense of driving with a *revoked* license and made no mention of "pretrial release." When the State proffered defendant was on pretrial release on August 6, 2023, when the shootings occurred, the State referred to the driving with a *suspended* license charge. Defendant, by making this argument on appeal, misinterpreted or misconstrued the lower-court record. There is no evidence to contradict the State's proffer defendant was on pretrial release on August 6, 2023. Thus, in addition to the proffer showing defendant possessed a weapon, despite being barred from doing so, there is proffered evidence defendant has a history

- 8 -

of not complying with pretrial conditions.

¶ 24        Defendant has not shown the trial court abused its discretion in finding the State clearly and convincingly proved the threat could not be mitigated by any condition or combination of conditions. See, *e.g.*, *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44, 91 N.E.3d 950 (stating the appellant bears the burden of persuasion as to his or her claims of error).

¶ 25        Defendant's second checked ground for relief is irrelevant. The second box checked by defendant asserts the trial court erred in finding no condition or combination of conditions would reasonably ensure defendant's appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. This argument applies to appeals from orders *revoking* pretrial release under section 110-6(a) of the Code (725 ILCS 5/110-6(a) (West 2022)). Defendant was detained under section 110-6.1 of the Code (see *id.* § 110-6.1(a), (e)(2)-(3)), which does not require the State prove this factor before obtaining an order *denying* defendant pretrial release.

¶ 26        For his third argument, defendant, on his notice of appeal, provided additional information under a box for "Other." Defense counsel wrote the following:

> "Defense proffered evidence concerning [defendant's] statements. According [to] the disclosure provided, the police officer advised [defendant] of his *Miranda* rights before the interview began. [Defendant] indicated he did not understand. However, the interview continued. Pursuant to statute, while this may not rise to the level of suppression, this issue goes to the weight of the State's evidence."

¶ 27 At the hearing, defense counsel raised this issue, and the trial court noted it agreed it went to weight. The *Miranda* rights issue only applies to defendant's statement placing himself at the scene of the shooting. According to the State's proffer, video evidence, GPS evidence, and witness testimony placed defendant at the scene. The State proffered more than sufficient evidence to satisfy its burden. Even if defendant could prove error, which he did not, we would find the error harmless beyond a reasonable doubt.

¶ 28 III. CONCLUSION

¶ 29 We affirm the trial court's judgment.

¶ 30 Affirmed.