2024 IL App (4th) 240103

NO. 4-24-0103

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| KENDALL CECIL MORGAN, | ) | No. 24CF3 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Amy L. McFarland, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Lannerd and Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Kendall Cecil Morgan appeals the trial court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 2 On appeal, defendant argues that (1) we should review the trial court's rulings *de novo* and (2) the court erred by denying him pretrial release because the State failed to establish by clear and convincing evidence that no condition or combination of conditions of release would

mitigate the real and present threat he posed to the community. We disagree on both points and affirm.

¶ 3                                    I. BACKGROUND

¶ 4             On the evening of December 29, 2023, defendant arrived visibly drunk and upset at the apartment of Vanessa Williams, the mother of his child. Williams refused to let defendant inside because she was seeking an order of protection against him, so he broke a front window and kicked in the front door. He then began hitting Williams in the face and threw her against a mirror in the apartment, causing it to break. Three minor children were in the apartment at the time; two of them ran to a neighbor's home and called 911. When officers arrived on the scene, they found defendant on top of Williams in the doorway to the apartment. The officers observed blood and bruises on Williams's head and face as well as a bite mark on her left hand. Defendant struggled with one of the officers but was eventually taken into custody.

¶ 5             Defendant was charged by information with one count of home invasion (720 ILCS 5/19-6(a)(2) (West 2022)) and one count of domestic battery (*id.* § 12-3.2(a)(1)). On January 2, 2024, the State filed a verified petition to deny defendant pretrial release on dangerousness grounds, citing both charges as qualifying offenses. See 725 ILCS 5/110-6.1(a)(1), (4) (West 2022). The State also sought a no contact provision in the detention order preventing defendant from contacting Williams while he remained in custody. See *id.* § 110-6.1(m)(2) (allowing for such a provision). The trial court held the detention hearing immediately.

¶ 6             At the hearing, the State proffered evidence of the above allegations, as well as details regarding defendant's criminal history. Defendant was convicted of a 2007 armed robbery and was sentenced to 14 years in the Illinois Department of Corrections. Defendant had two additional prosecutions pending against him in McLean County, one for driving under the

influence in 2021 and another for battery against Williams in December 2023 (*i.e.*, the same month as the home invasion and battery alleged in this case). At the time of both alleged attacks of Williams, defendant was serving a term of 30 months' probation for aggravated battery of a peace officer in McLean County case No. 21-CF-175. His release status from the battery alleged to have occurred earlier in the month is unclear from the record, as are any conditions attendant to that release. Defendant's public safety assessment report rated him as a 5 out of 6 on the "New Criminal Activity" scale and a 4 out of 6 on the "Failure to Appear" scale.

¶ 7        Defense counsel proffered evidence that defendant had just been diagnosed with bipolar disorder and would seek and comply with mental health treatment on release; no specific treatment plans were identified. Counsel suggested that defendant be placed on electronic monitoring with a condition prohibiting contact with Williams. According to defense counsel, defendant might assert an affirmative defense of involuntary intoxication because he had taken a pain pill from a friend and blacked out before attacking Williams.

¶ 8        The trial court concluded that no release conditions could mitigate the real and present threat defendant posed, in particular because defendant had committed the charged offenses while on probation. The trial court entered a written detention order and included the requested no contact provision.

¶ 9        This appeal followed.

¶ 10                                II. ANALYSIS

¶ 11        On appeal, defendant argues that (1) we should review the trial court's rulings *de novo* and (2) the court erred by denying him pretrial release because the State failed to establish by clear and convincing evidence that no condition or combination of conditions of release would mitigate the real and present threat he posed to the community.

¶ 12                          A. Standard of Review

¶ 13          Since this court began deciding appeals under the Act, the Fourth District has consistently reviewed the trial court's findings regarding pretrial release for an abuse of discretion. See, *e.g.*, *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11; *People v. Martin*, 2023 IL App (4th) 230826, ¶ 21. " 'An abuse of discretion occurs when the [trial] court's decision is "arbitrary, fanciful or unreasonable" or where "no reasonable person would agree with the position adopted by the [trial] court." ' " *Inman*, 2023 IL App (4th) 230864, ¶ 10 (quoting *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)). When reviewing issues of statutory construction, however, we have employed *de novo* review. See, *e.g.*, *People v. Jones*, 2023 IL App (4th) 230837, ¶ 13; *People v. Minssen*, 2024 IL App (4th) 231198, ¶ 17; see also *People v. Battle*, 2023 IL App (1st) 231838, ¶ 24 (rejecting the defendant's objection to the trial court's findings where her objection "fail[ed] to consider the plain language of section 110-6.1 [of the Code]").

¶ 14          Relying primarily on the special concurrence in *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 64 (Ellis, J., specially concurring), defendant invites us to depart from our prior decisions and review the trial court's findings under a less deferential standard. While *Inman* stands as presumptively appropriate authority in this district, it was an early decision under the Act; we are aware that other courts have disagreed with *Inman* and applied a different standard. Consequently, we use this case as the opportunity to reexamine *Inman*'s conclusion in light of these cases. Because our deliberations required additional time, we find there is good cause for extending the deadline for this decision from its original deadline of April 3, 2024. See Ill. S. Ct. R. 604(h)(5) (eff. Dec. 7, 2023). As discussed below, however, our examination of the matter ends

up exactly where *Inman* left us: the conclusion that the abuse of discretion standard of review is appropriate in appeals of pretrial detention decisions under the Act.

¶ 15    We begin our examination by recognizing that the standard for the trial court's initial detention decision as set forth in the Act is something of an anomaly. When seeking to detain a defendant prior to trial, the State is specifically authorized to proceed via "proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022). Normally, a proffer is not considered evidence but a statement as to what evidence would be. See *People v. Weinke*, 2016 IL App (1st) 141196, ¶ 41 ("A proffer is used to convince a trial court to admit evidence and must apprise the trial court 'what the offered evidence is or what the expected testimony will be, by whom it will be presented and its purpose.' " (quoting *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 451 (2004))). The Act, however, appears to equate "proffer" with "evidence," as it permits the presentation of "*evidence* at the hearing by way of *proffer*." (Emphases added.) 725 ILCS 5/110-6.1(f)(2) (West 2022). This creates an anomaly because the State's proffered "evidence" must reach the level of "clear and convincing" weight in order to justify detention (*id.* § 110-6.1(e)), even though it is unclear how a proffer can be "weighed" in the same way that witness testimony or documentary evidence might be. A more apt description of the standard of proof in the trial court, at least where proffers are involved, might be proof by a "clear and convincing *description* of the evidence." It is not difficult to see how this description, though accurate, is out of harmony with traditional notions of the burden of proof.

¶ 16    Anomalous or not, this is the scheme the Act prescribes, so the task facing the appellate court is to determine how best to review a trial court's finding that the State's proffer, by itself or combined with admitted evidence, satisfies the "clear and convincing" evidentiary burden. Selecting a standard of appellate review of decisions made under such a curiously constructed

standard of proof presents a significant challenge; if the foundation (the standard in the trial court) is doctrinally unsound, it becomes more difficult to have confidence in the structure built upon it (the standard of review in the appellate court). With these challenges in mind, we now proceed to assess the three most common options suggested for the standard of appellate review—manifest weight of the evidence, *de novo*, and abuse of discretion—fully aware that each may present reasons to find it less than entirely satisfactory.

¶ 17                                    1. *Manifest Weight of the Evidence*

¶ 18          Some have suggested that the trial court's findings in the detention context should be reviewed under a manifest weight of the evidence standard. *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29; *People v. Johnson*, 2023 IL App (5th) 230714, ¶ 14. We find ourselves in agreement with this approach in one respect: it suggests a standard that employs a degree of deference to the trial court's decision.

¶ 19          Our specific concern with the manifest weight standard, however, is that it builds on the anomaly noted above. At least where some or all of the "evidence" before the trial court consists of proffers, the manifest weight standard asks the appellate court to determine whether a finding is against the "weight" of something that cannot be weighed, at least not in the same way that true evidence can be. For example, neither we nor the trial court can decide the "weight" to give to the credibility of a declarant whose testimony was only described via proffer. Viewed properly, the trial court's role is not to evaluate such a declarant's credibility but to digest the proffered information, assess its strength in the light of contrary information, and make a *judgment* about how all of the information received bears on the statutory requirements regarding pretrial release.

¶ 20 On the question of dangerousness, for example, the Act directs the trial court to consider eight different factors, as well as a ninth catchall factor. See 725 ILCS 5/110-6.1(g)(1)-(9) (West 2022). There can be little doubt that not all judges would examine and balance all relevant factors in precisely the same way or even reach the same result. It is not even a finding of historical fact but a prediction of the risk of future conduct (and, in regard to conditions of release, what steps might adequately mitigate that risk). The United States Supreme Court has explained that "a prediction of future criminal conduct is 'an experienced prediction based on a host of variables' which cannot be readily codified." *Schall v. Martin*, 467 U.S. 253, 279 (1984) (quoting *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 16 (1979)). These are not the kind of decisions where any particular outcome can be described as "clearly evident," the relevant outer boundary under manifest weight review. See *People v. Chambers*, 2016 IL 117911, ¶ 75 ("Review for abuse of discretion is proper when the trial court *** must, for lack of a better phrase, make a judgment call.").

¶ 21 Procedurally, where the "evidence" presented below is composed mostly or entirely of proffers, a trial court's decision under the Act is not dissimilar to the decision of whether to enter a temporary restraining order (TRO) in a civil proceeding. The "evidence" at a TRO hearing is composed of "specific facts shown by affidavit or by the verified complaint." 735 ILCS 5/11-101 (West 2022). The trial court must make determinations that appear to be fundamentally factual: whether "immediate and irreparable injury, loss, or damage will result to the applicant" if the TRO does not issue. *Id.* Despite the fact-intensive nature of the issue, the trial court's decision is reviewed not under the "manifest weight" standard but the abuse of discretion standard. See *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 541-42 (1983).

¶ 22 Similarly, in the context of a motion to disqualify a defendant's chosen counsel in a criminal case, the supreme court has recognized that a trial court may disqualify counsel "only if it could reasonably find that defense counsel has a specific professional obligation that actually does conflict or has a serious potential to conflict with defendant's interests." *People v. Ortega*, 209 Ill. 2d 354, 361 (2004). Although this decision requires the trial court to weigh facts, it is nevertheless reviewed for an abuse of discretion on appeal, even when those facts are undisputed. *Id.* at 360; see *People v. Holmes*, 141 Ill. 2d 204, 223 (1990) (rejecting the view "that courts can always determine in a definite, precise manner whether a conflict or potential conflict of interest exists" and provide a simple "yes or no" answer).

¶ 23 Both the manifest weight and abuse of discretion standards of review are deferential to the trial court's ruling. See *Best v. Best*, 223 Ill. 2d 342, 350 (2006) (manifest weight standard); *In re D.T.*, 212 Ill. 2d 347, 356 (2004) (abuse of discretion standard). Between the two, we continue to believe the abuse of discretion standard is the better fit for reviewing pretrial detention decisions under the Act. While the manifest weight standard is properly employed with respect to trial court findings based on evidence, the trial court making a detention decision is presented with "evidence" consisting primarily, if not wholly, of proffers. Furthermore, the broad subjects of the trial court's ruling—"dangerousness" and "sufficiency" of conditions as provided by statute—are inherently exercises of judgment informed by an abbreviated record.

¶ 24                                 2. *De Novo Review*

¶ 25 Others have argued that, at least when the trial court's decision is based on proffers with no assessment of credibility, the reasons for deference to the trial court disappear, so we should employ a *de novo* standard of review. *Saucedo*, 2024 IL App (1st) 232020, ¶ 102 (Ellis, J., specially concurring). However, even where all of the "evidence" presented is by way of proffer,

the trial court also has the ability to observe something that the reviewing court never will: the defendant. A trial judge "can observe the defendant's demeanor and whether he or she appears compliant versus defiant or threatening," an opportunity not afforded to the reviewing court. *Pitts*, 2024 IL App (1st) 232336, ¶ 42 (Van Tine, J., specially concurring). The trial court's greater opportunity to observe the defendant is reason enough to afford deference to its findings. This is similar to the imposition of a sentence following conviction, a decision we review for an abuse of discretion "because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36; see *Rowe*, 2023 IL 129248, ¶ 49 (comparing discretion under the Act with discretion in sentencing). This standard of review still applies even though sentencing decisions "often involve materials that are not admitted as evidence, such as presentence investigation reports and statements from victims, friends, and family." *People v. Wells*, 2024 IL App (1st) 232453, ¶ 19; see 730 ILCS 5/5-4-1(1) (West 2022) (outlining materials the trial court may consider at a sentencing hearing).

¶ 26         Furthermore, the "evidence" at some detention hearings will include more than just proffers, documentary evidence, and the trial court's observations of the defendant; it may extend to evidence such as live witness testimony, police reports, body camera footage, text messages, jail calls, and the like. It would be fundamentally unworkable to apply a different standard of review for each piece of evidence depending on its nature. For example, if a trial court evaluating a defendant's dangerousness considers the State's proffer about the facts supporting the underlying charges but also hears eyewitness testimony that the defendant violently resisted arrest, the trial court would still have to make a unitary finding on the single issue of dangerousness. How could this court employ *de novo* review of the evidentiary proffer while affording deference to the trial

court's evaluation of the witness's credibility? A single finding based on testimony and direct observation of the defendant, as well as documentary or proffered evidence, cannot be simultaneously reviewed under one standard for the former and a different one for the latter.

¶ 27    It has been further argued that the *de novo* standard is justified even for traditional evidence because a pretrial detention order interferes with a defendant's strong interest in liberty. See *Saucedo*, 2024 IL App (1st) 232020, ¶ 107 (Ellis, J., specially concurring) ("[B]oth our supreme court and the United States Supreme Court have embraced independent *de novo* review in other fact-intensive contexts where the importance of the constitutional rights at stake so warranted."). We take no issue with the premise that defendants have a strong interest in liberty from incarceration, but we find neither authority nor reason to conclude that the importance of a constitutional right dictates a *de novo* standard of review for every appeal in which that right is implicated. See, *e.g.*, *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 176 n.13 (1983) (declining to review a fact-intensive constitutional claim *de novo*); see also Henry P. Monaghan, *Constitutional Fact Review*, 85 Colum. L. Rev. 229, 264-65 (1985) ("[T]here are a wide range of constitutional challenges in which the [United States Supreme] Court does not see itself under an inexorable duty to engage in constitutional fact review."). The United States Supreme Court has pointedly *not* embraced *de novo* review even when independently reviewing some of a trial court's factual determinations, stating: "The independent review function is not equivalent to a '*de novo*' review of the ultimate judgment itself, in which a reviewing court makes an original appraisal of all the evidence to decide whether or not it believes that judgment should be entered for plaintiff." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 514 n.31 (1984).

¶ 28 In any event, while it has been suggested that the supreme court has "rejected the abuse-of-discretion standard when deciding issues of constitutional magnitude" (*Saucedo*, 2024 IL App (1st) 232020, ¶ 108 (Ellis, J., specially concurring)), this has not been invariably the case. In *Ortega*, 209 Ill. 2d at 359, the court employed abuse of discretion review of a decision disqualifying counsel, specifically rejecting the proposition that *de novo* review "is particularly important to achieve consistency when a constitutional right is at stake"—there, the constitutional right to the assistance of counsel. Although the United States Supreme Court endorsed the due process safeguard of "immediate appellate review of [a] detention decision" under the federal Bail Reform Act of 1984 (18 U.S.C. § 3141 *et seq.* (2018)), it did not hold that any particular standard of review was required to protect the defendant's liberty. *United States v. Salerno*, 481 U.S. 739, 752 (1987).

¶ 29 As noted above, it is well established that sentencing decisions are reviewed for an abuse of discretion. *People v. Webster*, 2023 IL 128428, ¶ 32; accord *Gall v. United States*, 552 U.S. 38, 51 (2007). Trial court decisions on whether to sentence a defendant to imprisonment, or how long the sentence should be, have an even greater impact on the defendant's liberty than do decisions regarding pretrial release, but the restriction on the defendant's liberty is no less important. See *Wells*, 2024 IL App (1st) 232453, ¶ 19 ("If we entrust trial courts to exercise discretion in fashioning sentences, then we should trust them to exercise discretion in making pretrial detention rulings ***."). Similarly, the fact that a defendant facing a criminal sentence lacks the same presumption of innocence afforded a defendant before trial does not mean that a less deferential standard is appropriate; the presumption of innocence is not fundamentally incompatible with abuse of discretion review even when bedrock constitutional rights are involved.

See *Ortega*, 209 Ill. 2d at 360 (right to counsel of defendant's choice); *People v. McDonald*, 2016 IL 118882, ¶ 42 (right to present a theory of defense).

¶ 30 At bottom, *de novo* review means that "[w]e perform the same analysis that a trial court would, and we owe no deference to the trial court." *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 25. Coupling the automatic right of appeal from detention decisions (see 725 ILCS 5/110-6.1(j) (West 2022)) with a *de novo* standard of review would diminish the significance of trial courts' decision-making and guarantee every defendant a second bite at the apple on every aspect of every detention decision. We do not believe this unworkable outcome is demanded either by the kind of materials considered or the gravity of the rights involved in a detention decision.

¶ 31                                     3. *Abuse of Discretion*

¶ 32 In *Inman*, we reasoned that pretrial detention appeals most closely resemble appeals from "order[s] setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof" under Illinois Supreme Court Rule 604(c)(1) (eff. Sept. 18, 2023); we held that the same standard applicable in bail appeals—abuse of discretion—should also apply to appeals "by the defendant from an order denying pretrial release" under Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Sept. 18, 2023). *Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11 (citing *Simmons*, 2019 IL App (1st) 191253). The abuse of discretion standard for bail appeals under Rule 604(c) dates to *People v. Edwards*, 105 Ill. App. 3d 822, 830 (1982). Before Rule 604(c) was enacted in 1971, defendants challenging bail decisions were required to petition the supreme court for a writ of *habeas corpus*. *People v. Kelly*, 24 Ill. App. 3d 1018, 1032 (1975). Even these earlier decisions, however, employed abuse of discretion review. See, *e.g.*, *People ex rel. Smith v. Blaylock*, 357 Ill. 23, 26 (1934) ("[T]he statute is silent on the subject of the amount of the bond that the magistrate may

impose ***, yet the discretion committed to the magistrate must be exercised reasonably and neither arbitrarily nor tyrannically ***.").

¶ 33        *Pitts* attempted to distinguish *Simmons* and other cases predating the Act on the basis that those cases involved "the setting of bail rather than detention." *Pitts*, 2024 IL App (1st) 232336, ¶ 19; compare 725 ILCS 5/110-5 (West 2018) (governing the determination of conditions of release), with 725 ILCS 5/110-6.1 (West 2018) (governing the denial of bail in nonprobationable felony offenses). But see Ill. S. Ct. R. 604(c)(1) (eff. Dec. 7, 2023) (drawing no distinction between "order[s] setting, modifying, revoking, denying, or refusing to modify bail or the conditions thereof"). In other words, *Pitts* suggested that, while the abuse of discretion standard might be appropriate when reviewing the amount of bail or other conditions of release imposed, a less deferential standard of review is necessary when bail is denied and no conditions of release are found adequate. But detention and release are merely two sides of the same coin. A decision not to detain is a decision to release, subject only to a determination of the appropriate conditions; a decision not to release is a decision to detain. We are aware of no authority supporting the curious suggestion that such implicitly interrelated decisions under the former bond and detention statutes would or should have been subjected to different standards of appellate review.

¶ 34        Furthermore, we fail to understand why a different standard of review would be appropriate when, for instance, the trial court sets bail at an astronomical sum as opposed to denying bail altogether; indeed, such astronomical sums historically served as a denial of bail in disguise. See *People ex rel. Sammons v. Snow*, 340 Ill. 464, 469 (1930) ("The amount of $50,000 could have no other purpose than to make it impossible for [the defendant] to give the bail and to detain him in custody, and is unreasonable."). A cursory review of the caselaw on bond appeals demonstrates that the underlying reason for each appeal is that the *defendant was detained* due to

an inability to post sufficient bond. The suggestion that bond appeals present lesser implications for the defendant's liberty than cases involving no-bond detention is simply unsupportable. The various provisions of the old and new statutes address what is fundamentally a single overarching inquiry: whether and under what conditions a defendant may be detained prior to trial. Accordingly, the trial court's detention decision should be reviewed under a single standard, and a continuation of the former standard is sensible.

¶ 35          In short, we will continue to abide by our prior holdings that a trial court's decision and findings on issues of pretrial detention are appropriately reviewed under the abuse of discretion standard. See *Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. When reviewing the trial court's decision for an abuse of discretion, we do not disregard the State's burden of proving its case by clear and convincing evidence because, "for a reviewing court to determine whether the trial court abused its discretion, it must undertake a review of the relevant evidence." *McDonald*, 2016 IL 118882, ¶ 32. Moreover, " '[a] trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts,' and a reviewing court 'must consider both the legal adequacy of [the] way the trial court reached its result as well as whether the result is within the bounds of reason.' " *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006) (quoting *Ortega*, 209 Ill. 2d at 360). Therefore, while the abuse of discretion standard is deferential, it affords the defendant meaningful review and does not amount to a rubber-stamp of the trial court's decision. *Id.*; see, *e.g.*, *People v. James*, 368 Ill. App. 3d 433, 436 (2006) (applying *Ortega* and finding that the trial court abused its discretion). Indeed, we have not hesitated to overturn detention decisions under the abuse of discretion standard. See, *e.g.*, *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 20; *People v. Shaffer*, 2024 IL App (4th) 240085-U, ¶ 27; *People v. Sims*, 2024 IL App (4th) 231335-U, ¶ 31; *People v. Perez*, 2024 IL App (4th) 230967-U, ¶ 16.

¶ 36                               B. Conditions of Release

¶ 37        Defendant here argues that "the State presented no evidence that a condition of release ordering treatment for his recent bipolar diagnosis would not mitigate [defendant's] dangerousness." Thus, defendant argues, "the State failed to establish by clear and convincing evidence that no condition or combination of conditions could mitigate the danger he posed." Of course, this court is not directly assessing the State's evidence and making our own findings; we are assessing whether the record adequately shows that the trial court acted within its discretion in making the finding it did.

¶ 38        The initial problem with defendant's argument is its failure to recognize the sequence of events. The record here suggests that the State made its proffer before defendant ever suggested he had recently been diagnosed with bipolar disorder, so it would be unreasonable to expect the State's proffer to extend to an undisclosed issue. Defendant fails to explain how the State was expected, if not required, to present evidence on a matter first disclosed at the hearing.

¶ 39        While the Act provides that the State always has the burden of proving that no combination of conditions of release is adequate, there is no limit to the number or kind of reasonable conditions that the trial court can impose. See 725 ILCS 5/110-10(b)(9) (West 2022). We cannot expect the State to specifically raise and argue against every possible condition of release in every case; there must be some limiting principle. In general, it is reasonable to anticipate that the State will address conditions insofar as they relate to the charged conduct, the defendant's criminal history, the defendant's risk assessment score, and any other relevant considerations about the defendant known to the State at the hearing. See *id.* §§ 110-6.1(f)(7), 110-10(b) (emphasizing that decisions regarding conditions of release must be individualized); see also *Atterberry*, 2023

- 15 -

IL App (4th) 231028, ¶ 19 (holding that the trial court's findings must relate to the particular defendant and not a "typical" defendant in similar circumstances).

¶ 40        Here, the State's central argument against the sufficiency of conditions was defendant's past misconduct, including violent misconduct occurring when defendant was on probation. While defendant's focus was on his recent mental health diagnosis and his stated intention to seek treatment, it is hardly surprising that the parties had different views on which issue was most important when considering conditions of release. It became the trial court's responsibility to evaluate each party's argument and evidence. Ultimately, the court found the State's position to be more persuasive, as the court was concerned about defendant's continuing misconduct while on probation or pretrial release. This is a highly relevant concern, as a defendant's release on conditions depends on the court having confidence that the defendant will *comply* with those conditions.

¶ 41        In *Martin*, 2023 IL App (4th) 230826, ¶ 23, we held that a trial court must make a record showing that less restrictive conditions of release have been considered so that we can meaningfully review whether the trial court properly exercised its discretion in denying pretrial release. But the issue in *Martin* was that there was no discussion of possible conditions by counsel or the court, with the trial court summarily declaring that the defendant " 'need[ed] to be detained.' " *Id.* Here, on the other hand, both sides' attorneys presented arguments on the issue of conditions. When the court listens to a complete rendition of the parties' arguments and essentially sides with one of them, perhaps the imperative for lengthy or detailed findings is diminished. In the absence of an explicit indication to the contrary, we will presume that the court considered all available conditions of release on such a record. *Cf. People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 43 (taking a similar approach when reviewing a trial court's sentencing decision).

Regardless, the trial court here *did* share its specific rationale for finding that conditions could not adequately address the potential danger posed.

¶ 42　　　It is true that the trial court did not specifically address defendant's suggestion that he should be released to allow for treatment of his recently diagnosed bipolar disorder, but this case is a far cry from the one relied upon by defendant, *People v. Castillo*, 2024 IL App (1st) 232315. In *Castillo*, the defendant proffered evidence about efforts *already* undertaken to "make positive changes to herself, including group therapy, substance abuse treatment, and parenting classes." *Id.* ¶ 4. The defendant also showed that she had "secured in-patient treatment" at an appropriate facility. *Id.* The trial court denied her pretrial release without addressing her proposed course of action on release. Here, on the other hand, defendant gave the court only the most cursory reference to his "recently diagnosed" condition, did not explain how the condition related to the alleged offenses, and had only a vague plan to seek treatment in the future. The trial court acted well within its discretion in finding that defendant's history of noncompliance was more probative on the issue of the adequacy of conditions for release.

¶ 43　　　　　　　　　　　III. CONCLUSION

¶ 44　　　Because the trial court did not abuse its discretion in ordering defendant detained, we affirm the court's judgment.

¶ 45　　　Affirmed.

*People v. Morgan*, 2024 IL App (4th) 240103

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 24-CF-3; the Hon. Amy L. McFarland, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Ross E. Allen, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |