NOTICE

Decision filed 07/03/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240520-U

NO. 5-24-0520

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 24-CM-167 |
| | ) | |
| JACOLBY BATES, | ) | Honorable |
| | ) | Robert E. McIntire, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Presiding Justice Vaughan and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's order imposing conditions of release where the overall determination regarding conditions of pretrial release was not an abuse of discretion, but remand with directions for the circuit court to enter written findings regarding the imposition of electronic monitoring.

¶ 2    The State appeals the March 26, 2024, order of the circuit court of Vermilion County[1] that set conditions for the defendant's pretrial release pursuant to the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act (Act),[2] as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See Pub. Acts 101-652, § 10-255,

_____

[1]The common law record and the appellant's brief indicate that the trial judge/hearing officer was the Honorable Derek Girton; however, the record of proceedings, the notice of appeal, and the appellee's brief state that the detention hearing was conducted by the Honorable Robert E. McIntire.

[2]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

1

102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). On appeal, the State argues that the circuit court abused its discretion in granting the defendant pretrial release since the State had met its burden, by clear and convincing evidence, that the defendant should be detained. For the following reasons, we affirm the order of the circuit court of Vermilion County, but remand with directions for the circuit court to enter written findings regarding the imposition of electronic monitoring.

¶ 3                                    I. BACKGROUND

¶ 4     On March 15, 2024, the defendant was charged by information with one count of domestic battery/bodily harm in violation of section 12-3.2(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.2(a)(1) (West 2022)) and one count of domestic battery/physical contact in violation of section 12-3.2(a)(2) of the Code (*id.* § 12-3.2(a)(2)). The charges alleged that on March 5, 2024, the defendant caused bodily harm to K.W., a nine-year-old minor who was a household member, in that the defendant struck the minor about the body with a belt causing visible injury. The information also stated that the defendant had been previously convicted of domestic battery in Vermilion County case No. 20-CM-135.

¶ 5     On March 18, 2024, the State filed a verified petition to deny the defendant pretrial release. The circuit court conducted a hearing on March 25, 2024, which was continued at the request of the defendant, until March 26, 2024. At the hearing on March 26, 2024, the State proffered that on March 5, 2024, law enforcement officials became aware of a situation involving K.W., a minor. K.W. had been disciplined at school for some behavior, and the next day, he returned to school with visible injuries. The injuries included a swelling of his left eye, a cut on his face, scratches to his left arm, and scratches and marks on his back and legs. The minor disclosed that he had been "whipped by a belt" by his mother and the defendant, who is the minor's stepfather. The minor

stated that they had taken turns holding him down while the other one wielded the belt, and that he was wearing only his underwear at the time. The State's proffer further stated that when the school counselor spoke with the defendant, he stated that he disciplines the kids how he wants to, and that he would continue to discipline them the way that he wants.

¶ 6    The State also proffered the defendant's prior convictions which included battery of a family or household member, reckless discharge of a firearm, resisting arrest, criminal trespass to land, criminal damage to property, and burglary. As such, the State requested that the defendant be detained, or if released, that electric monitoring along with no entry orders be required.

¶ 7    The defendant stated at the hearing that he and the minor's mother were not married at the time of the incident but were married on March 8, 2024. The defendant argued that the minor had stated that it had happened on only one occasion and that detention would be "going way overboard." The defendant also stated that a blind had hit the minor in the face when he was struggling causing the injury to the minor's face, and as such, the injury was not from being struck with a strap. The defendant also argued that the minor's mother had not been detained, and therefore, the defendant should not be detained for the exact same incident.

¶ 8    The circuit court inquired as to any involvement by the Illinois Department of Children and Family Services (DCFS). The State indicated that it believed that the minor was currently living between the two homes of his grandparents, and then the circuit court stated as follows:

"Well I'm not sure I'm going to give a lot of credit for [the defendant's] version of the situation. I'll say this. It has occurred to me that I might be able to release [the defendant] since it also occurred to me that perhaps DCFS had—or law enforcement had taken shelter care and had made some sort of placement arrangements for this [minor]. Apparently, that's

3

not the situation, and I'm concerned about the safety of this young man, now that he has reported this incident to his school counselors and to law enforcement."

¶ 9    The defendant's counsel stated that it was his belief that the minor was in foster care and indicated that the minor's mother was present at the hearing. The following dialog then occurred:

"MOTHER: They are with my mother right now, as we speak.

THE COURT: Okay. And that's where he's living?

MOTHER: That's where he's at.

THE COURT: Living 24/7.

SPECTATOR: He [is] not at my house like he supposed to be. We're not sharing custody. The thing was I did have him, but I work Friday through Monday. So by me working Friday through Monday, I drop the kids off to her.

THE COURT: And when we're saying shelter care, is there some sort of court order there, or is this DCFS?

MOTHER: This is with DCFS.

SPECTATOR: This is with DCFS.

THE COURT: Safety plan or what?

DEFENSE COUNSEL: They are saying with DCFS."

¶ 10    The State then made an objection, stating that there were a lot of people talking, that the State was not aware of who the individuals were or what their names were, and that the individuals were not under oath. The State informed the circuit court that it could not indicate one way or the other whether there was a DCFS case or any type of case. The circuit court then stated as follows:

"Okay. All right. Well and there's not always a case. Sometimes it's, you know, a DCFS safety plan, which is negotiated within the parties. So here's what I'm going to do. I'm

4

going to release [the defendant], but the condition of release is going to be that he has no contact with this minor, and what that means is that if [the defendant] is going to continue to live where he's living, the minor can't be there. Like I said, I don't know whether there is a court order, DCFS safety plan or what, but [the defendant] cannot have any contact with the minor."

¶ 11 The State then requested that the circuit court make electric monitoring a condition of the defendant's release along with a no entry to the primary residence of minor. The circuit court declined to enter a no entry order to the primary residence since the circuit court indicated that it wanted the minor residing elsewhere "24/7." Regarding electronic monitoring, the circuit court stated as follows:

"I think I will—I think I will order that. Is there—now apparently, he would know the address of the other place where the child stays. Basically, I'm going to—I'm going to order that he not be within 500 feet of the named victim."

The circuit court then advised the defendant of his appeal rights and adjourned the hearing.

¶ 12 The circuit court entered a written order the same day stating that the defendant was charged with a detention-eligible offense, but that the circuit court had denied the State's petition to detain. The written order also imposed the mandatory conditions of release set forth in section 110-10(a) of the Code (725 ILCS 5/110-10(a) (West 2022)), along with a no contact order with the minor and electronic monitoring. Pursuant to section 110-5(g) and (h) (*id.* § 110-5(g), (h)), the circuit court found that no less restrictive condition of release or combination of less restrictive conditions of release would reasonably ensure the appearance of the defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm. The circuit court's basis for that finding, however, was left blank.

5

¶ 13    Later the same day, the State filed an emergency motion to modify pretrial release conditions. The motion stated that the defendant was unable to be released with the terms and conditions imposed by the circuit court, because an electronic monitoring device could not be installed with the condition of no contact with the minor since electronic monitoring could track the movements of the defendant but could not track the defendant in relationship to the minor. The State's motion also indicated that the State had contacted DCFS and that DCFS was investigating the matter; determining the proper residence options for the minor; verified the minor's school; and verified the address at which the minor was residing with his maternal grandmother. As such, the State requested that the circuit court modify the defendant's pretrial release conditions to a no contact with the minor, no entry to the minor's school, and no entry to the residence at which the minor was staying.

¶ 14    The circuit court granted the State's emergency motion[3] the same day and entered a written order directing that the defendant shall not have any direct or indirect contact with the minor, that the defendant remains 500 feet away from the minor, and that the defendant have no entry to the minor's school or current residence. The circuit court's order also allowed future modification if DCFS or pretrial services verified a change in the minor's school or residence. The circuit court's written order granting the State's emergency motion did not contain any mention of electronic monitoring. On April 9, 2024, the State filed a timely notice of appeal. [4]

---

[3]The record on appeal does not contain a report of proceedings regarding the State's emergency motion.

[4]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before July 1, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

6

¶ 15                              II. ANALYSIS

¶ 16    On appeal, the only issue raised by the State is whether the circuit court abused its discretion in releasing the defendant with conditions where the State had proven, by clear and convincing evidence, that the defendant should be detained pending trial. The State argues that it had met its burden under the three-pronged analytical framework required under the Code for detention, *i.e.*, that the defendant was charged with a qualifying offense, that the defendant posed a real and present threat to the safety of any person or the community, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community. See *id.* § 110-6.1(a). In support of its argument, the State cites to the factors contained in sections 110-6.1 and 110-5 of the Code (*id.* §§ 110-6.1, 110-5), and reiterates the evidence presented at the hearing as applied to those factors. The State argues that the circuit court abused its discretion in failing to detain the defendant prior to trial, and requests that this court reverse the circuit court's order granting the defendant pretrial release.

¶ 17    Pretrial release, including any conditions related thereto, is governed by the Act as codified in article 110 of the Code (*id.* art. 110). A defendant's pretrial release may be denied only in certain statutorily limited situations. *Id.* § 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the circuit court concludes

7

that the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)), or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)). If the circuit court determines that the defendant should be denied pretrial release, the circuit court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h)(1).

¶ 18　If pretrial release is granted, the Act mandates that the circuit court impose certain conditions that are mandatory and allows other permissive conditions to be imposed. *Id.* §§ 110-5(c), 110-10(a) (mandatory conditions); 110-10(b) (nonexclusive list of permissive conditions). The conditions of release imposed, however, shall be the least restrictive conditions or combination of conditions necessary to reasonably ensure the appearance of the defendant as required, or the safety of any other person or persons or the community. *Id.* § 110-5(c).

¶ 19　To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person, except that the court may consider the admissibility of any evidence sought to be excluded; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* § 110-5(a). Section 110-5 does not require written findings by the circuit court regarding the basis for each of the permissive conditions imposed, except for the condition of electronic monitoring, which does require the

circuit court to set forth in the record the basis for imposing electronic monitoring. *Id.* §§ 110-5, 110-5(h).

¶ 20    As noted previously, in this matter, that portion of the circuit court's written release order regarding the basis for the circuit court imposing electronic monitoring was left blank. At the hearing, the circuit court stated:

> "I think I will—I think I will order that. Is there—now apparently, he would know the address of the other place where the child stays. Basically, I'm going to—I'm going to order that he not be within 500 feet of the named victim."

The circuit court ordered that the defendant remains 500 feet from the minor, and it appears from the record that it did so based on the defendant's knowledge "of the other place where the child stays." The circuit court did not state the basis for imposing electronic monitoring and this court cannot speculate that the above was also the basis for the circuit court's finding concerning electronic monitoring. See generally *People v. Swanson*, 2024 IL App (4th) 230660-U, ¶ 37; *Doe v. Readey*, 2023 IL App (1st) 230867, ¶ 36. Therefore, we find that the circuit court erred in failing to set forth in the record the basis for imposing electronic monitoring.

¶ 21    Our standard of review of pretrial release determinations is twofold. The circuit court's factual findings will be reviewed under the manifest weight of the evidence standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under the manifest weight standard, we give deference to the [circuit] court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Id.* The circuit court's ultimate determination regarding pretrial release, however, will not be reversed

absent an abuse of discretion. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 11. An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the circuit court. *Id.*

¶ 22    Here, the State repeats the evidence and arguments that it made at the hearing and asks this court to come to a different conclusion than the circuit court. It is an inherently difficult decision regarding detention when the safety of a minor is at risk. It is why this court defers to the circuit court in making such a decision because it is in the best position to observe the conduct and demeanor of the parties and witnesses. Although this court must consider both the legal adequacy of the manner in which the circuit court reached its result as well as whether the result is within the bound of reason, this court will not reweigh the evidence and substitute our judgment for that of the trier of fact. See *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35; *People v. Jackson*, 2020 IL 124112, ¶ 64. This court has found that the conditions imposed by the circuit court could not reasonably ensure the safety of any other person or persons or the community; however, we did so only upon a finding that the conditions imposed were decidedly insufficient to prevent the defendant from committing further harm based on the specific articulable facts of each case. See *People v. Willenborg*, 2023 IL App (5th) 230727, ¶ 21.

¶ 23    In this matter, the circuit court found that the defendant was charged with a detention-eligible offense and further stated that it was "concerned about the safety of this young man, now that he has reported this incident to his school counselors and to law enforcement." The record demonstrates that the circuit court was aware of the potential harm to the minor if the defendant was released but determined that the defendant could be released under the conditions set by the circuit court. The record also reflects that the circuit court was aware of DCFS's involvement with the minor.

¶ 24　We have thoroughly reviewed the record on appeal in this matter and, based on our review of the record, we find that the circuit court's factual findings regarding the conditions of release were not against the manifest weight of the evidence. We further find that the circuit court's ultimate determination to grant the defendant pretrial release was not arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the circuit court. As such, the circuit court's release order was not an abuse of discretion. We do, however, find that the circuit court erred in failing to provide its findings in the record regarding the basis for imposing electronic monitoring. Therefore, we remand this matter with directions for the circuit court to modify its release order of March 26, 2024, to include its findings regarding electronic monitoring as required by section 110-5(h) of the Code (725 ILCS 5/110-5(h) (West 2022)).

¶ 25　　　　　　　　　　　　　　III. CONCLUSION

¶ 26　For the foregoing reasons, we affirm the March 26, 2024, order of the circuit court of Vermilion County, setting conditions for the defendant's pretrial release, but remand the matter with directions that the circuit court set forth in the record the basis for imposing electronic monitoring.

¶ 27　Affirmed and remanded with directions.