NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240599-U

NO. 4-24-0599

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 3, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| FRANK W. WENGER II, | ) | No. 23CF1421 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Philip J. Nicolosi, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justice DeArmond and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Frank W. Wenger II, appeals the trial court's order denying him pretrial release under section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a) (West 2024)), hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4    On June 15, 2023, the State charged defendant with aggravated driving under the influence of alcohol resulting in death (625 ILCS 5/11-501(a)(2), (d)(1)(F) (West 2022)) and reckless homicide (720 ILCS 5/9-3(a) (West 2022)). By superseding indictment, defendant was charged with the original charges as well as four additional charges: aggravated driving with an alcohol concentration of .08 or more in blood or breath resulting in death (625 ILCS

5/11-501(a)(1), (d)(1)(F) (West 2022)), aggravated driving under the influence of alcohol resulting in great bodily harm (*id.* § 11-501(a)(2), (d)(1)(C)), aggravated driving with an alcohol concentration of .08 or more in blood or breath resulting in great bodily harm (*id.* § 11-501(a)(1), (d)(1)(C)), and aggravated reckless driving (*id.* § 11-503(a)(1), (c)). Bond was set at $200,000, 10% to apply.

¶ 5        On January 23, 2024, defendant filed a motion for reconsideration of pretrial release conditions. The motion does not appear in the record. The State responded by filing, on February 9, 2024, a verified petition to deny defendant pretrial release.

¶ 6        The detention hearing was held in March 2024. The record reveals the hearing had begun the week before but was continued when there was a question regarding whether the petition was adequately verified. The trial court held that it was, and the hearing continued. At the hearing, the State proffered officers from the Winnebago County Sheriff's Office were dispatched on June 14, 2023, for a disorderly subject, defendant, at a bar in Durand, Illinois. At that bar, defendant drank two beers that he ordered from waitstaff. He then "helped himself to approximately three shots worth of vodka from behind the bar he himself poured into his beer glass." A dispute over defendant's paying for that alcohol occurred between defendant and the waitstaff. Defendant left the bar before the officers arrived. Approximately 1 hour and 15 minutes after officers were dispatched to the bar, the officers were dispatched to a crash. Two individuals not involved in the collision were at the scene and spoke to the officers. One witness cut defendant from his seatbelt. That witness informed officers he could smell alcohol coming from defendant. The witness further reported defendant seemed calm despite the gravity of the situation, including the fact his vehicle was flipped on its roof and was just involved in a very serious crash. Another witness at the scene told officers Russell Moore, the driver of the second

vehicle, was "partially in the vehicle, partially out of the vehicle." That witness helped Moore exit his vehicle. Approximately 15 to 20 feet from the vehicle, Moore collapsed. He was later pronounced dead. Moore's vehicle was engulfed in flames and had to be extinguished by the fire department. Amanda Bruce, Moore's daughter, was also in that vehicle. She suffered significant injuries, including extensive bruising and a laceration requiring stitches to her knee.

¶ 7 The State further proffered field-sobriety tests performed at the scene indicated defendant was impaired. Defendant refused to provide a sample to be tested. Defendant was taken to the hospital, where he required additional medical treatment. A medical draw was completed by the hospital. Testing done pursuant to a search warrant showed "at three and a half hours later, he was .167 with his blood alcohol level after the conversion rate from the whole blood to a blood alcohol concentration." The State proffered, during defendant's interview, defendant "indicated he had too much to drink" and responded "no" when asked if he was okay to drive. Bruce reported to officers defendant was traveling in their lane and "driving in a reckless manner." Russell, her father, attempted to avoid impact, braked and tried to swerve to the right but defendant's vehicle still struck them head on. The impact of the collision separated the cabin of defendant's pickup from the bed of the truck. In 2009, defendant was charged with aggravated discharge of a firearm but convicted for reckless discharge of a firearm, after having fired four shots in the direction of a neighbor's residence. He was sentenced to two years' probation. In that case, the State suggested alcohol was a factor as the court in that case ordered defendant to refrain from consuming alcohol as a term of probation. In that same incident, defendant resisted arrest by pulling away from the officer. He had to be tased to be detained. In 1997, defendant was convicted in Florida for possession of drug paraphernalia.

¶ 8 Defense counsel argued a combination of conditions could mitigate any threat, if

the trial court found a threat sufficiently proved. According to counsel, defendant arranged to live with a family member who agreed to have a landline for the purpose of establishing a curfew. Counsel suggested defendant be ordered to "not possess or consume alcohol, illicit drugs, or [tetrahydrocannabinol (THC)]," to report to pretrial services, and submit to testing to monitor his compliance. Further suggestions included treatment for substance abuse.

¶ 9    Defense counsel proffered defendant's 2009 conviction was his only criminal history. Counsel noted the probation officer in that case stated in the status report defendant was tested nine times for substances and had all negative drops. The officer reported defendant had "been a pleasure to deal with." Defendant successfully completed the sentence of probation having been, according to another probation officer, "in complete compliance with reporting to probation as directed and providing urine samples when required." That officer further reported defendant provided employment verification as required. Defense counsel highlighted defendant complied with court orders and had been cordial and respectful during all hearings.

¶ 10    Defense counsel further countered the State's conclusion the 2009 case involved alcohol:

> "By [stating] the 2009 CF case must have involved alcohol
> because one of his bond conditions was to refrain from possession
> or consumption of alcohol, as to that there's two points. One, it
> was a common, if not standard practice for certain judges, and each
> judge is different, but for certain judges who appeared in bond
> court to, regardless of the offense and regardless of the factual
> basis noted in the probable cause statement, order an individual to
> refrain from the use of substances. Sometimes that—from

- 4 -

previous, previous experience in bond court, that was often the

State's position to ask for that regardless and see if the court would

grant it."

¶ 11       The State countered the prohibition against alcohol consumption in 2009 was a handwritten condition and not a preprinted box to check. The State further argued if alcohol was not at issue, then "defendant was just at large shooting in his backyard at his neighbor's house." The State further highlighted GPS was not available "within this county" and they had no ability to monitor if defendant was going to a bar or to a liquor store. The State further noted a landline can be forwarded to a cell phone.

¶ 12       According to the pretrial services report, defendant worked for one and a half years for "Stateline Disposal." He did not list a previous employer. Defendant suffered a broken neck and back from the incident. He had acid reflux and was being treated for anxiety and depression. Defendant had used alcohol, cocaine, and cannabis. His first use was at age 16. He last used on June 14, 2023. He denied "any current substance abuse concerns" and reported using "alcohol on Wednesday, 6/14/23, [cannabis] on Tuesday, 6/13/2023 and Cocaine when he was 19 years old (one time)." Defendant had attended treatment in Florida in 1997. Defendant denied having a drug or alcohol problem.

¶ 13       On March 18, 2024, the trial court entered a written order to detain defendant. The court found, by clear and convincing evidence, the dangerousness standard had been proved. The court, in finding defendant posed a real and present threat and why less restrictive conditions would not mitigate that threat, the court summarized the circumstances of the offense. The court also cited the pretrial report:

"The [pretrial service] Report also indicates defendant has a

history of alcohol, cocaine (defendant stated the cocaine was only one time) and [cannabis] use dating back to when he was 16 years old. Defendant was 46 years old at the time of the [driving under the influence] arrest. Defendant has a history of putting others in the community in danger. In a previous arrest in Winnebago County defendant was alleged to have fired a shotgun in the direction of his neighbor's property. Upon contact with police, defendant then resisted arrest and ultimately was tased by police. Defendant pled guilty in that case to Reckless Discharge of a Firearm and [was] placed on probation. These actions on the part of defendant pose a real and present threat to the safety of the community."

The court further emphasized not only the nature and circumstances of the charged offenses but also defendant's behavior at the bar, as well as the fact defendant had undergone substance-abuse treatment. The court observed defendant did not believe he had a drug or alcohol problem but "consumed alcohol to a point where he was twice the legal limit and admitted that he knew he was incapable of safely driving a motor vehicle." The court rejected defendant's suggestions for release conditions:

"Defendant offered suggestions for conditions of release but provided scant information about his living arrangements and how he would propose to get to and from any court ordered appointments or drops since he does not have valid driving privileges. Defendant suggested a curfew. This requires a landline

and there was no assurance that those calls would not be transferred to a mobile device at a different location. Our current technology does not have [GPS] capabilities to monitor a defendant's specific location. Although defendant has previously undergone substance abuse treatment in the past, there is no evidence of any recent treatment. A suggested [secure continuous remote alcohol monitoring] device would not provide adequate protection of the public as it does not prevent someone from consuming alcohol and driving, it only attempts to monitor consumption, with the results often not being reported for days or weeks. Further, it does not detect THC or other substances."

¶ 14 This appeal followed.

¶ 15       II. ANALYSIS

¶ 16 In March 2024, defendant filed a notice of appeal, arguing the State failed to prove by clear and convincing evidence he poses a real and present threat to the safety of a person or persons or the community and no condition or combination of conditions can mitigate that alleged threat. As to his first argument, defendant maintains this court, in *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 19, "rejected the trial court's attempt to bootstrap the 'real and present danger' finding to its finding that Defendant was presumed to have committed a criminal act with dangerous elements." He contends the trial court did the same here while essentially detaining him based simply on the charged conduct. Defendant further maintains the court's decision was improperly based on the conclusion defendant had a long history of alcohol and drug use and on a 15-year-old conviction to find defendant is a present danger.

¶ 17          The Code presumes all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2024). Before a trial court may order a defendant detained, the State must prove multiple elements. One is to prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(2). The trial court has broad discretion in choosing what factors to consider in making this determination. See *id.* § 110-6.1(g) (setting forth factors a trial court may consider when considering dangerousness). These factors include the nature and circumstances of the offense charged (*id.* § 110-6.1(g)(1)) and defendant's history and characteristics (*id.* § 110-6.1(g)(2)). We review decisions regarding pretrial detention for an abuse of discretion. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35 (refusing to apply the manifest-weight-of-the-evidence standard). This court will find an abuse of discretion only if we conclude the trial court's decision is unreasonable, arbitrary, or fanciful or we conclude no reasonable person would agree with the decision. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10.

¶ 18          The trial court did not abuse its discretion in finding defendant to be a threat to the community. The court emphasized not only the nature and circumstances of the offense but also defendant's behavior preceding his driving under the influence, including taking three shots of vodka from behind a bar and refusing to pay. While defendant seemingly contends the court erred by finding a history of alcohol abuse and, according to defendant, implying he had been doing so for over two decades, we find no error in the court's citing this history. Defendant had received treatment, and defendant admitted consuming alcohol and cannabis. We also find no error in the court's reliance on defendant's 2009 conviction. The court's decision finding defendant a threat to the community is not based solely on that nearly 15-year-old conviction.

Instead, it was based on the circumstances of the charged offense, the circumstances preceding the offense, the admission of drug and alcohol use, defendant's having received treatment for drug and alcohol use in the past, and defendant's 2009 conviction for shooting a weapon at his neighbor's house. The court's conclusion defendant is a threat is not fanciful, arbitrary, or unreasonable.

¶ 19 Defendant next challenges the trial court's finding the State proved by clear and convincing evidence no condition or combination of conditions can mitigate the threat. Defendant, citing *Atterberry*, 2023 IL App (4th) 231028, ¶ 17, contends the trial court here erred as in *Atterberry* by speculating as to whether possible pretrial conditions would allow for monitoring, rather than preventing, an infraction. Defendant also maintains here, as in *Atterberry*, the court's findings were not specific to him, and he emphasizes the proffer showing he complied with earlier terms of probation. Defendant further argues the trial court shifted the burden to defendant to provide assurance calls would not be transferred to a mobile device.

¶ 20 Before a defendant may be denied pretrial release under the dangerousness standard, the State must prove by clear and convincing evidence "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(3)(i) (West 2022).

¶ 21 The trial court did not abuse its discretion in finding the State proved this element by clear and convincing evidence. This case is not like *Atterberry*. In *Atterberry*, the court relied on information outside the record to find pretrial release conditions were "loosely monitored" and were not, therefore, adequate to mitigate the threat. *Atterberry*, 2023 IL App (4th) 231028, ¶ 17. We reversed upon finding "a court should not rule out pretrial release for a defendant based

on a general perception that conditions of release are loosely monitored." *Id.* ¶ 18. Here, the court was not concerned defendant would be "loosely monitored" but found, based on the nature and circumstances of the offense and defendant's history, including defendant's conduct at the bar, the potential conditions for release would be ineffective in mitigating the threat this particular defendant poses to the community.

¶ 22      We are also not convinced the trial court shifted the burden of proof on this element to defendant. It is clear by the court's analysis it knew the State carried the burden of proof. The court did not find defendant did not meet its burden of proof but found defendant's proffer was insufficient to counter the State's proffer a curfew or home confinement would be insufficient. According to the pretrial report, defendant, if released, intended to reside at the residence where he had lived with a child for two and a half years. The State argued defendant should not be allowed to stay at home as landlines may be forwarded. Defendant countered the State's proffer by stating, contrary to what was recorded in the pretrial report, he would reside with a relative he did not name and that did not yet have a landline. The burden was not shifted; the court simply did not accept defendant's vague counter argument.

¶ 23      We also note defendant's contention the trial court erred in stating twice defendant's substance use began at age 16. Defendant contends "[a]t no time in the two-part hearing was the age 16 mentioned by either counsel" and the pretrial service report does not reference it. Defendant is incorrect. The pretrial service report plainly states defendant reported "Age at first use: 16."

¶ 24                           III. CONCLUSION

¶ 25      We affirm the trial court's judgment.

¶ 26      Affirmed.